The above suit was consolidated with three other suits now on appeal to this court; viz., Joseph Cook v. Kolb, 9 So.2d 868; Mrs. Joseph Cook v. Kolb, 9 So.2d 869, and S.A. Booze against the same defendants, W.E. Kolb and his insurance carrier, T.H. Mastin Company, operating Consolidated Underwriters, 9 So.2d 870. All four suits are for damages arising out of an automobile collision between a car owned and operated by Kolb and a car driven by Joseph Cook a few miles north of Oberlin on the paved highway around 6:30 o'clock P.M., February 4, 1940. The allegations of negligence charged against Kolb are practically the same in all four suits, and what is said in this opinion relative to the liability, vel non, of Kolb and his insurer will apply to all four cases, but separate opinions will be written in the other three cases relative to the question of damages and separate decrees entered in those cases.
In the above entitled case, the trial court rendered judgment in favor of plaintiff on behalf of his minor daughter against both defendants for injuries received by her in the sum of $2,500; in the other suits, in favor of Joseph Cook for $1,800; in favor of Mrs. Joseph Cook in the sum of $200; and in favor of S.A. Booze in the sum of $450. The defendants have taken separate appeals in all four cases.
Joseph Cook was driving a 1936 Dodge Sedan south on the paved highway from Oakdale towards Oberlin. In this car with Cook were five other persons; namely, Booze on the front seat; Ashey and his daughter, Asine, and Mrs. Joseph Cook and her minor daughter on the back seat. It was drizzling rain which, with a foggy atmospheric condition, made visibility poor at 6:30 P.M. in February.
It is the contention of plaintiff that Cook was driving at a moderate rate of speed on his right side of the highway, with his lights burning; that the defendant, Kolb, was coming north in the opposite direction at an excessive rate of speed, swaying and *Page 866 
zigzagging from one side of the road to the other; that Cook reduced his speed and pulled to the edge of the pavement on his side of the road; that the Kolb car cut to its left diagonally across the road and ran into and collided with the Cook car, the left front end of the Kolb car striking the left front of the Cook car, knocking it around and throwing it perpendicularly across the road and coming to a standstill with the front of the two cars hooked together. Asine Ashey suffered an oblique fracture of her right arm, shock and minor bruises and abrasions. Her claim is for $5,000 on account of physical injuries and suffering, plus $125 for medical expenses.
The negligence charged to Kolb consisted in his driving at an excessive speed with such unfavorable weather conditions prevailing and while under the influence of intoxicating liquor; also in getting over on the wrong side of the road and striking the Cook car. Defendants deny any negligence on the part of Kolb, but claim that the accident resulted from the negligence of Cook in driving his car at an excessive speed and in coming over on Kolb's side of the road and striking his car on its left end. In the alternative, the defendants pleaded the alleged negligence of Cook, which was concurred in by Asine Ashey and her father, as a bar to the suit.
The principal question in the case is which driver — Kolb or Cook — was on the wrong side of the road when the collision occurred? Each claims that he was on his right side and the other was on the wrong side of the road. As the trial judge says, it is obvious that one or the other was on the wrong side of the road, otherwise there would not have been a collision of the two cars, and there would have been no occasion for these law suits. The trial judge found that Kolb was on the wrong side of the road, and we are asked on this appeal to reverse this finding of fact by the trial judge and conclude that Cook is the one who got on the wrong side of the road and thus caused the two cars to collide.
As we stated in the case of Cecil Cutrer v. Luther Jones et al., 9 So.2d 859, this day decided, the rules of the road require the drivers of vehicles to drive on the right half of the road, except when overtaking and passing another vehicle, and require the drivers of vehicles proceeding in opposite directions to pass each other to the right, each giving the other one half the traveled portion of the road for a distance of at least 200 feet before meeting. Rules 5 and 6, Section 3 of Act 286 of 1938. An observance of these wholesome rules by both Kolb and Cook would have avoided this accident, regardless of the excessive speed of either.
The substance of Cook's testimony is that he was driving south at a moderate rate of speed (as we understand his testimony at a speed of 30 to 40 miles per hour) on his right side of the road; that he saw the other car coming in the opposite direction, and he dimmed his lights and pulled over to the edge of the pavement on his side of the road and slowed down to 15 or 20 miles per hour; that the Kolb car was coming toward him at a fast speed and came across his side of the road and struck his car.
Booze, who was sitting on the front seat beside Cook, stated that the latter was on his right side of the road, going 30 to 35 miles per hour; that they saw the other car coming at a fast speed zigzagging on the road with bright lights; that Cook slowed down to 15 or 20 miles per hour and pulled over to the right on the edge of the pavement; that the other car "swung" and hit the Cook car on the left front; that the cars hung together when they collided and stopped across the highway with the Cook car turned across the road to the left and hooked into the front of the Kolb car.
Both of the above witnesses at the suggestion of defense counsel attempted to indicate on a sketch the position of the two cars just before and after the accident, but we are satisfied that they did not fully understand these drawings as their testimony in this respect does not correspond with the sketches. They are of the Syrian race and, as the trial judge stated, had some difficulty in making themselves understood.
None of the other occupants of the Cook car could give much helpful testimony as to how the accident happened for the reason that they were either asleep or not paying any attention. Antoine Ashey, who is suing in behalf of his minor daughter in this case, testified that he was asleep on the back seat but woke up just as the two cars collided; that just as the cars hit and he woke up the Kolb car was on its left side of the road and struck the left front of the Cook car with the left front wheel of the Kolb car, causing the Cook car to be forced across the center line to its left diagonally across the pavement. It is significant to note here that the trial judge *Page 867 
concluded from all the testimony and physical facts that the accident happened about like this witness attempted to explain in his testimony; that Kolb got on his left side of the road, and just before meeting the Cook car, he pulled back to his right and the left front of his car caught the left front of the Cook car and pulled it to the left and diagonally across the road, with the Kolb car still facing in a northerly direction on its side of the road.
A mechanic who picked up the Cook car after the accident testified that most of the damage to this car was on the left front; that the left side of the radiator was knocked back, and the radiator grill shell was ruined, the witness adding, "that was caused from pulling to one side after it had been hit on the left side". We agree with the trial judge that this is rather strong evidence corroborative of plaintiff's contention that the Kolb car hooked into the left front of the Cook car and pulled it across the road in the position it came to rest after the accident.
In the car with Kolb were B.B. Montgomery and Miss Minerva Miller, all sitting on the front seat with Miss Miller in the middle. The substance of Kolb's testimony is that he was driving on his side of the road from 40 to 45 miles per hour with his dimmers on when he saw the Cook car coming in the opposite direction, zigzagging across the road, and from the reflection of the lights he concluded that the other car had gotten on the shoulder of the road on its right side; that he immediately began to slow down to a speed of around 20 miles per hour, and the Cook car in cutting back onto the pavement came diagonally across the road and ran into the left front fender of his car, his car coming to a stop almost on the edge of the pavement on his side of the road with the front wheels a few inches further to the right than the rear wheels, and the Cook car hooked into the front of his car and diagonally across the road facing in a southeasterly direction.
If Kolb was driving on his side of the road and Cook came across from his side and struck the left front of the Kolb car at an angle of 45 degrees, with both cars going around 20 miles per hour as Kolb claims, it is reasonable to assume that the impact of the Cook car would have knocked the Kolb car off the pavement on the east side of the road, and, as the trial judge held, it is not reasonable to believe that the accident happened as Kolb claims that it did.
Neither Montgomery nor Miss Miller could swear that Kolb was on his side of the road when the collision occurred. Montgomery says he was not paying much attention to the road as he could not see much anyway (no doubt on account of the darkness, rain, and fog); that Kolb was driving 40 miles per hour when he (the witness) saw the Cook car coming toward them a distance which he fixed from where he was on the witness stand across the court room (which distance we assume could not be over 50 feet or so), and that he then hollered to Kolb to look out for the car. This indicates clearly that Kolb had not seen this oncoming car until this warning was given by Montgomery at this close distance. Kolb says he put on his brakes immediately and slowed down his speed, all of which confirms the contention of the plaintiffs that the Kolb car swung or zigzagged across the road just before the collision.
Miss Miller could not see the black line in the center of the road and did not see the Cook car until the instant of the crash. She did say that the lights of the Cook car were coming toward them at an angle at the moment of the crash, implying that the Cook car was headed across the road at an angle. However, it could be urged with as much reason that Kolb was pulling back to his right just before the collision which would have caused the lights of the Cook car to strike the front of the Kolb car at an angle.
While some witnesses testified that they smelled liquor on Kolb, yet we do not find that he was under the influence of liquor nor that the drinking of intoxicating liquor had anything to do with the accident. Neither can we say that the speed of Kolb had any direct causal connection with the accident, however, his speed of 40 miles or more per hour on the night of the accident with such poor visibility no doubt did have the effect of making it difficult for him to drive safely on his side of the road. Our conclusion is that the trial judge was correct in holding that the proximate cause of the accident was the negligence of Kolb in getting on the wrong side of the road previous to meeting the Cook car coming from the opposite direction.
As to the amount of the award, it is obvious that the minor cannot recover *Page 868 
for the medical expenses caused by her injury; that is an expense to be borne by her father, and he alone could sue to recover it in his own name. This girl, Asine Ashey, sustained an oblique or spiral fracture of the humerus of her right arm, severe shock and minor bruises of the body. She stayed in the hospital for about ten days. A metal or airplane splint was first placed on her arm, but it was found that this splint would not hold the broken fragments in place, and after a few days she was put in a plaster cast which covered the entire upper half of her body. This plaster cast was kept on for some two months and caused considerable discomfort during that time. After this cast was taken off light dressings were put on the arm for several weeks, and the arm was stiff for several months. Of course, she suffered some pain as well as discomfort during the treatments, the pain being so severe while she was in the hospital that it was necessary to give her hypodermics. We are cited to awards for broken arms ranging from $500 to $3,000. While an award of $2,500 for the injuries to this girl might appear a little high, yet in view of the rather serious nature of the fracture and the accompanying pain and long period of uncomfortable treatment endured we are not in position to say that an award of $2,500 for the injuries is excessive.
For the reasons herein assigned, it is ordered that the judgment in the case of Antoine J. Ashey for the benefit of his minor daughter, Asine Ashey, against W.E. Kolb and T.H. Mastin 
Co., operating Consolidated Underwriters, be and the same is hereby affirmed at the cost of defendants in both courts.