FOURNET, Chief Justice.
 

 We granted certiorari in this case to review the judgment of the Court of Appeal, First Circuit, reversing the judgment of the trial court in favor of the plaintiff, Peggy Corkern, and dismissing her suit against The Mayor and Council of Morgan City, the W. D. Owens Construction Company, principal contractor in the construction of a natural gas transmission line being installed by the town, the Smith-Sweger Construction Company, the subcontractor actually performing the digging operations, and their respective public liability insurers, Travelers Insurance Company, United States Fidelity and Guaranty Company, and Bituminous Casualty Corporation, in soli
 
 *595
 
 do,
 
 [1]
 
 to recover damages for personal injuries sustained while using a pathway prepared by the employees of the subcontractor to cross a sidewalk where excavation work was being carried on. See Corkern v. Travelers Insurance Co., La.App., 80 So.2d 885, 887.
 

 It appears that at the time of the accident the gas line was being installed on Railroad Avenue, a business district of Morgan City, in the block between First and Front Streets, and the eleven-foot wide sidewalk on one side of the street had been broken with an electric drill the length of the block about three feet from the curb for a strip two feet in width, leaving an unbroken section approximately six feet wide bordering the doorways of business establishments fronting on the sidewalk. At the request of Mr. Shepard, owner and operator of Shepard’s Radio Shop located in the middle of the block, a pathway was left from his doorway to the curb for the convenience of those alighting from automobiles. From First Street to Shepard’s entrance the broken concrete and dirt had been dug out to form a trench some three feet deep, and broken pieces of concrete were scattered about; from Shepard’s entrance to the Front Street corner, the cement had been broken but no excavation had yet been made. About 5:15 p. m. on December 2, 1949, while still daylight, the plaintiff parked her car nearby and alighted with the intention of entering Shepard’s radio store to have repaired a small table radio which she carried, and in attempting to use the above-mentioned pathway she stepped upon a piece of concrete which thereupon turned on its end, causing her to be thrown to the ground with force and resulting in a fractured dislocation of the right ankle.
 

 For cause of action plaintiff relies on the fact that the space had been purposely left as a passage way for the convenience of people who desired to enter Shepard’s store from the street, but that the work had been carelessly and unskillfully done so that the path, while appearing to be safe and firm, was in fact a trap in that the stones were not firmly set or anchored. The defense was a general denial, and an alternative plea of contributory negligence on the part of the plaintiff.
 

 The trial judge, in a well considered opinion in which he carefully analyzed the facts and cited pertinent jurisprudence, concluded that the pathway constructed by the subcontractor was an invitation to the public to make use thereof, and they had a right to rely on its being safe; but in fact it was constructed without skill or care in that the large broken pieces of cement placed over the dirt passage were not well anchored or made secure, and it was in fact a trap hiding a dangerous condition—
 
 *597
 
 as exemplified by the accident in this case; and in disposing of the plea of contributory negligence we think properly observed that “Certainly she cannot be charged with lack of observation, nor that she was not looking where she was walking. Had these fragments of concrete and cement been stationary, as they should have been, she was not negligent in attempting to do what she did, and undoubtedly she believed that these fragments were anchored and placed there as stepping stones for the use of pedestrians.”
 

 The Court of Appeal agreed with the trial judge’s summary of the applicable law concerning liability, and after summarizing his holding, commented: “We greatly respect the opinion of the trial court, but in view of the fact that the overwhelming preponderance of the evidence indicates that these loose concrete pieces were visible by ordinary prudent observation, we must respectfully disagree with his conclusion that such pathway constituted a trap; or at least that the plaintiff was not contributorily negligent in failing to observe the dangerous condition of this pathway, but nevertheless proceeding across it carrying an awkward table radio, which obscured her vision below.”
 

 Our appreciation of the evidence fails to disclose that plaintiff’s vision was in any wise obscured by the table radio she was carrying at the time of the accident; and whether the pieces of concrete were somewhat embedded in dirt and sand, presenting the appearance of stepping stones “placed there to be stepped on,” as found by the trial judge, or whether, as found by the Court of Appeal, “the pieces of concrete composing the path were visible and uncovered by any sand” is of no importance because, as found by the trial judge, the very purpose of the path was to allow Shepard’s customers who came by automobile to cross into his establishment from the street; and in the absence of a warning of danger in the use of the passageway, pedestrians having occasion to traverse it would naturally assume, and had a right to assume, that it was sufficient for the purpose, subject only to such imperfections as might be readily observed by use of ordinary care, and that the concrete pieces were to be stepped on in negotiating the passage. See Allen v. Town of Minden, 127 La. 403, 53 So. 666; Rock v. American Const. Co., 120 La. 831, 45 So. 741, 14 L.R.A.,N.S., 653; Burke v. Werlein, 143 La. 788, 79 So. 405.
 

 Counsel for plaintiff call to our attention the fact that the trial judge in his judgment made specific awards for pain and suffering, $6,000, for disfigurement and blemishes, $1,500, for loss of time and wages, $480, for medical and hospital expenses, $1,331.41, which amounts aggregate $9,311.41, but gave judgment for only $8,-311.41, which they claim was an error in addition, and ask that we make the correction here. While the error complained of is obviously one of calculation we are powerless to correct it as the plaintiff neither
 
 *599
 
 asked for a correction in the lower court, nor did she appeal from that judgment or answer the defendants’ appeal to the Court of Appeal. Betz v. Riviere, 211 La. 43, 29 So.2d 465.
 

 The defendants, on the other hand, claim that the award was excessive in all respects; they complain especially that as to the figure of $1,331.41 covering medical, hospital and incidental expenses, the plaintiff having been a minor when these expenses were incurred, not having been judicially emancipated until just prior to filing of this suit, her father, if living, or otherwise her mother, was responsible for such expenses and therefore the only person entitled to a right or cause of action for such damages — citing in support the case of Ashey v. Kolb, La.App. 1 Cir., 9 So.2d 865. A perusal of that case readily discloses that it is not apposite from a factual standpoint and is therefore not persuasive. As to the other items of damages, we are not disposed to reduce them because the facts of the case fully warrant the award made by the trial judge.
 
 [2]
 

 ., For the reasons assigned the judgment of the Court of Appeal, First Circuit, is reversed and set aside, and the judgment of the district court is affirmed; all costs of the appeal in this Court to be borne by the defendants.
 

 [1]
 

 . Smith-Sweger Construction Co. and its insurer, Bituminous Casualty Corporation, concede that the other parties defendant would be entitled to a judgment over against them in the event of such other parties being cast in judgment.
 

 [2]
 

 . Tlie accident resulted in fracture of the ■. bones of plaintiff’s right ankle and severe dislocation of the ankle; some five days after the ankle had been set and a cast applied, the cast had to be removed; the ankle was again broken, reset, and again placed in a cast which plaintiff wore for a period of two weeks. Because progress was unsatisfactory, plaintiff was then ' sent to an orthopedic surgeon in New ¡Orleans who performed two surgical operations in Baptist Hospital, which operations included the insertion of three screws for a proper alignment and healing of the broken bones, and later, the removal of the screws. Altogether a period of 23 days was spent in hospitals, two months were spent on crutches, and at tiie time of trial painful discomfort still resulted from prolonged use of the right leg, as in dancing or walking long distances.