SAMUEL, Judge.
This is an action for property damages and personal injuries resulting from an automobile accident. Plaintiff was the driver of an automobile which ran into a stalled delivery truck. She was 18 years of age and unemancipated at the time of the accident but judicially emancipated prior to the filing of this suit. The two defendants are National Dairy Products Corporation and Ideal Mutual Insurance Company, respectively the owner of the truck, which was being operated by National’s employees in the course and scope of their employment, and National’s liability insurer. The case was tried to a jury which returned a verdict in the amount of $6,500.00 in favor of plaintiff and against the defendants in solido. Judgment was rendered in accordance with the verdict.
The accident occurred on the Pontchartrain Causeway, approximately four miles from the St. Tammany end thereof, at about 7:45 a. m. on January 13, 1961. The Causeway crosses Lake Pontchartrain between Jefferson and St. Tammany Parishes and consists of two lanes, one for traffic traveling towards Jefferson and the other for traffic traveling in the opposite direction. The posted speed limits are 60 miles per hour maximum and 45 miles per hour minimum. At the time of the occurrence it was raining, there was a fog, and visibility was sufficiently poor as to require the use of headlights.
Defendants attack plaintiff’s credibility on the basis of some discrepancies between her testimony at the trial on one hand and in statements made to a police officer shortly after the accident and in discovery depositions on the other hand. We consider the discrepancies complained of in connection with the facts of the accident itself to be immaterial and such as are normally expected. They are concerned only with her speed, whether 40 or 45 miles per hour, and the distance from the stalled truck when she first observed that vehicle, whether two blocks more or less. As indicated by the doctor who first treated her shortly thereafter, at the time she made statements to the police officer she was quite disturbed, more or less hysterical, and in pain.
From a careful examination of all the pertinent testimony, including that of the plaintiff, the investigating police officer, the driver and the helper of the stalled truck, and a passenger in another truck involved in a prior and similar accident, we find the essential facts of the occurrence of the accident to be as follows:
The truck was traveling in the direction of St. Tammany when its motor stalled and it stopped in its lane of travel. The driver got out of the truck and attempted to find the cause of the trouble. The helper remained inside the truck out of the rain. Shortly thereafter a pick-up truck also traveling in the direction of St. Tammany and containing two men, driver and passenger, almost hit the stalled truck. The passenger was under the impression that the stalled defendant truck was moving when he first saw it. Upon discovering *373 that it was stationary, the brakes of the pick-up truck were applied, the truck skidded and turned completely around, not striking the defendant truck but ramming the railing on the opposite side of the Causeway, and came to rest facing back towards Jefferson Parish in the lane of traffic reserved for travel in that direction about 30 feet from the stalled defendant truck and closer to the Jefferson Parish side of the lake than was the latter. The pickup truck’s lights were on and remained lit. The passenger had been thrown out of the pick-up truck and injured. Using a passing vehicle which they stopped for that purpose, the drivers of the two trucks brought the injured passenger to a hospital. The helper •on the defendant truck stayed at the scene. He remained outside in the rain for a short period of time during which several vehicles passed and then went into his truck to get some covering which he could use as protection from the rain. The collision with which we are here concerned occurred while he was in the truck and only a short time, less than twenty minutes, after the first accident. No flags, flares or any other warning devices were placed behind the defendant truck at any time and the truck did not carry such equipment although required to do so, and to display the same, under LSA-R.S. 32:442 (now LSA-R.S. 32:367, 32:368).
Plaintiff was going from her home in Jefferson Parish to Hammond, Louisiana, where she attended college. She was traveling at a speed of approximately 40 miles per hour when she first saw the defendant truck approximately two blocks away. She .also saw the headlights of the pick-up truck facing toward her in the opposite lane of travel. She first thought the defendant truck was moving. Upon realizing it was stopped she applied her brakes and swerved to her left in an effort to avoid the collision. The right front of her car hit the left rear of the defendant truck and her car traveled just about six feet after the collision. She was taken to a hospital in St. Tammany Parish.
Defendants concede negligence on their part. They pleaded and now contend that plaintiff was guilty of contributory negligence which prevents any recovery by her. They further contend, alternatively: (1) plaintiff cannot recover for medical, hospital and other expenses due to the fact that she was an unemancipated minor at the time of the occurrence of the accident; (2) plaintiff cannot recover for damages to the automobile she was driving because she was not the owner thereof at the time the accident occurred; and (3) the award for damages resulting from plaintiff’s injuries was excessive.
There is no hard and fast rule which can be used to determine whether a plaintiff was contributorily negligent in failing to timely observe a stationary vehicle obstructing the highway ahead; the circumstances and facts in each particular case are controlling. Bertrand v. Trunkline Gas Company, La.App., 149 So.2d 152; United States Fidelity and Guaranty Co. v. Powell, La.App., 131 So.2d 168; Suire v. Winters, 233 La. 585, 97 So.2d 404.
Unlike the usual highway upon which accidents occur, the Causeway not only had a maximum speed limit of 60 miles per hour but also a posted minimum speed of 45 miles per hour. It is obvious of course that the minimum speed was subject to weather conditions and other circumstances. But equally obviously, the minimum speed requirement would tend to increase the danger of being struck from the rear while driving too slowly under any conditions. We are of the opinion that plaintiff’s speed of 40 miles per hour, or even 45 miles per hour as insisted by counsel for defendants, was reasonable under the circumstances. We also conclude that she was not contributorily negligent. The rain and fog of the January morning on which the accident occurred made it difficult to clearly observe objects from a distance. And it is understandable that plaintiff first was under the impression that the defendant truck was moving. When she discovered it *374 was stopped she was too close to avoid the collision, especially in view of the burning headlights of the pick-up truck in the opposite lane of travel. If she turned into that opposite lane before passing the pickup truck she might have collided with that vehicle and, insofar as she could determine in the exceedingly short time involved, the pick-up truck could also be moving and the maneuver of turning into the other lane of traffic might have resulted in a head-on collision.
Defendants’ contention that plaintiff cannot recover for medical, hospital, and other expenses is answered by the Supreme Court case of Corkern v. Travelers Insurance Co., 229 La. 592, 86 So.2d 205. In Corkern the plaintiff was an unemancipated minor when medical, hospital and incidental expenses were incurred. She was judicially emancipated just prior to filing the suit and the court held that it was proper to award her damages for such medical, hospital and incidental expenses.
The evidence relative to the ownership of the automobile driven by the plaintiff was as follows : The investigating police officer testified he talked to plaintiff at the hospital in St. Tammany Parish very shortly after she arrived there and in response to a question relative to ownership of the car plaintiff told him the car was owned by W. B. Chapman. The record reveals Mr. Chapman was plaintiff’s stepfather. At the trial plaintiff testified she had no recollection of answering questions asked by the police at the hospital and we have already pointed out that she was, at that time, disturbed, somewhat hysterical, and in pain. The testimony of plaintiff and her mother is to the effect that the automobile was given to her by her stepfather in February of 1959, when she was living with her grandmother in Tennessee, as an inducement to live with her mother and stepfather in Jefferson Parish. It was used exclusively by plaintiff. It was registered in Mr. Chapman’s name but he had signed an assignment of title to plaintiff on December 21, 1960 and the document was notarized on January 17, 1961. Plaintiff’s mother testified that she had seen her husband sign the document on December 21, 1960 and the signed document had remained in her possession until she had it notarized a few days after the accident. The trial court instructed the jury that if they came to the conclusion that the defendants were liable they could include in the award damages done to the automobile provided they found that plaintiff did own the automobile at the time of the accident; if they found that she did not own the automobile on the date of the accident she could not recover anything for damages to the car. Pie further instructed the jury that the automobile could have become plaintiff’s property prior to the date of the accident by manual gift or otherwise.
The trial court’s instructions were correct. As between the parties title to motor vehicles, even though imperfect and unmarketable because of a failure to comply with our Vehicle Certificate of Title statute (LSA-R.S. 32:701 et seq.), may be transferred in accordance with the provisions of the Civil Code. See Gooch v. Dick Bohn Ford, Inc., La.App., 140 So.2d 903; H. G. Williams Motor Company v. Zeagler, La.App., 92 So.2d 291; Transportation Equipment Co. v. Dabdoub, La.App., 69 So.2d 640. And under the provisions of LSA-C.C. Art. 1539 a manual gift of corporeal movables, accompanied by an actual delivery, is not subject to any formality.
Clearly there was sufficient evidence, which could have been accepted as credible by the jury, to sustain a finding that plaintiff was the owner of the automobile at the time of the accident. Under such circumstances we cannot set aside the verdict simply because there is some conflict in the testimony. See Renz v. Texas & Pacific Railway Company, La.App., 138 So.2d 114; Woods v. McCarty, La.App., 136 So.2d 122.
After the accident plaintiff was taken by a passing truck and then by ambulance to the hospital in St. Tammany Parish where she was treated by Dr. Jacob Kety. She *375 remained in that hospital for 24 hours and was then removed by ambulance while on a stretcher to Ochsner Foundation Hospital in Jefferson Parish. Her treating physician thereafter was Dr. Mary Sherman, an orthopedist. She remained at Ochsner for three days. She was then sent home, again on a stretcher in an ambulance, where she was required to remain in bed for a month. She suffered a cervical sprain or strain, an ankle sprain (x-rays revealed torn ligaments) and bruises to the forehead and knees. While in the hospital pressure dressings were applied to the injured ankle and just before going home her leg was placed in a cast from the knee to the toes. The cast was removed on February 9, 1961. Plaintiff was incapacitated to some extent through the month of April although during March she was able to drive a car using only the uninjured foot. She was last seen by Dr. Sherman during the month of April, 1961, when the doctor felt she was practically normal and saw no reason for further difficulty. However, she continued to have some trouble with her neck and ankle, particularly the latter, after standing too long or walking too great a distance. Dr. Sherman considered the cervical sprain less serious than the injured ankle. Plaintiff lost a semester at college as a result of her injuries.
The jury verdict awarded plaintiff the one lump sum of $6,500.00 without itemization of the various elements of damages. However, the record contains proof of damages to the automobile in the amount of $1,500.00, medical and hospital expenses in the amount of $257.60, and other incidental expenses in the amount of $68.25. ■Considering that the jury verdict in the amount of $6,500.00 properly includes these items, as it must, we are of the opinion that the award to plaintiff for damages resulting from her personal injuries was not excessive.
The judgment appealed from is affirmed; defendants to pay all costs in this court.
Affirmed.