278 So.2d 842 (1973)
George J. KRENNERICH, III, Plaintiff-Appellee,
v.
WCG INVESTMENT CORPORATION, and Wilmer C. Goss, Jr., Defendants-Appellants.
No. 4188.
Court of Appeal of Louisiana, Third Circuit.
May 30, 1973.
Rehearing Denied June 27, 1973.
*844 J. Minos Simon and John Rixie Mouton, Lafayette, for defendants-appellants.
Broussard, Broussard & Moresi, by Marcus A. Broussard, Jr., Abbeville, for plaintiff-appellee.
Before HOOD, CULPEPPER and MILLER, JJ.
MILLER, Judge.
Defendant WCG Investment Corporation owned an apartment building housing U.S. L. students. Defendant Wilmer C. Goss, Jr. was the principal corporate stockholder and manager of the building. Plaintiff George J. Krennerich, III was awarded $9,104.04 for personal injuries and special damages resulting from his fall from WCG's second floor balcony when a metal bannister railing gave way. Defendants appeal alleging six errors, among which is the contention that defendants were free from negligence and alternatively that Krennerich is barred by his contributory negligence. We affirm as to the defendant corporation, but reverse as to defendant Goss.
The second story of WCG's apartment building was accessible by means of an outside stairway to an approximately six foot wide balcony that extended along the front of the building. The balcony was enclosed by one horizontal metal pipe railing welded to upright metal pipe supports (where they existed) at a height of 36 inches above the floor. The railing at the end of the balcony where the accident occurred was welded to the upright member on the corner. The other end of the railing was anchored to the concrete block wall by means of a metal piece secured by three screws set into inserts which penetrated the concrete blocks. The accident occurred when the railing came loose from the metal piece affixed to the concrete block building which in turn broke the weld at the outside corner post.
Krennerich and his date were one of some twenty visiting couples who gathered at the apartment to watch the television presentation of the Miss America contest. At about 10:30 p. m. they left the apartment when the winner was announced. Krennerich's date had to return to pick up her purse. When she went in the apartment, Krennerich visited with others on the balcony. In the process he backed up to lean against the railing at a point near the side of the building. Julius A. Strassel was also leaning with his back to the railing but at a point near the welded upright support. The evidence is not uniform as to who leaned first or whether the railing gave way immediately after Krennerich leaned or some seconds later. When the railing gave way both Krennerich and Strassel fell to the ground. Defendants settled Strassel's claim and by third-party action against Krennerich, they sought one-half of the $3,500 paid to Strassel. On the findings hereinafter stated the third party action was properly dismissed.
The party started earlier in the afternoon and the couples were drinking beer. Krennerich drank four beers during an eight hour period. There was no showing that Krennerich's judgment was affected by the alcoholic content of the beer.
There was evidence that from time to time some of the forty persons in attendance at the party sat on the railing along the balcony and that some one or more had sat on the railing that later gave way. Defendants contend that it was this misuse of the balcony railing which dislodged the railing from the anchoring device so as to make an obvious hazard. Two guests at the party testified that they noticed that the railing was loose at its wall junction. *845 Defendants also urge that Krennerich was completing his third in a five year course of study in Architecture; that two weeks before the accident, he and another architectural student had noted the manner in which the railing was attached to the concrete block and were of the opinion that this was not a good detail to put on a building because concrete blocks do not support a railing as well as would a strip of metal going all the way down the side of the building. They opined that concrete blocks have an inherent weakness if you break into them to insert bolts or screws. But the structural problem foreseen by these architectural students did not develop. Pictures in evidence as P5 and 13 show that the concrete blocks did not give way. The metal support was attached to the concrete blocks by three screws. After the accident the top two screws were secure and the lower screw had pulled out a distance of only one-half inch. It appears that the manner in which the railing was attached to the metal support (which was in turn attached to the concrete blocks) accounted for the failure of the railing.
There is uncontradicted expert opinion by an architect who examined the site some ten days after the accident, that "... considering the size of the pipe railing, the type of attachment and the fact that U.S.L. students frequently sat on this railing that the same constituted an apparent and dangerous condition." (Tr. 80.)
Defendant Goss made visual inspections of the building periodically and was on the premises every day of the week. He testified that at no time did he observe the defect which caused this accident. We fail to find that defendant Goss as manager of the apartments had knowledge or notice of the defect or a reasonable opportunity to learn that the railing had come loose from the wall before the accident. The evidence preponderates that the railing was secure until the afternoon of the party; that due to normal usage of the railing by guests and/or tenants of the building, it became loose; and that while two guests were leaning with their backs against the railing it gave way without warning. Defendant Goss was not present on the afternoon and night of the party and there is no showing that he was negligent in his inspections or daily observations of the apartment building. Goss was not negligent and the judgment against him is reversed.
The balance of the trial court's judgment is affirmed. The applicable legal principals were set forth and authorities cited in Anslem v. Travelers Insurance Company, 192 So.2d 599 at 600 (La.App. 3 Cir. 1966). An owner-lessor is held to strict liability, i. e. liability without fault, for personal injuries sustained by his tenant or others through the defective condition of the premises; neither the landowner's ignorance of the defect nor its latency will defeat the injured person's recovery. LSA-C.C. Arts. 670, 2322, 2693 and 2695. On the other hand, not every defect causing injury is actionable, only those of a nature reasonably expected to cause injury to persons using ordinary care under the circumstances. Likewise, although the injured person's prior knowledge of the defective condition will not by itself defeat his recovery, his contributory negligence may do so if the injured person was fully aware that the defect was so dangerous that the premises could not be used even with the exercise of due care.
Applying these principles the defendant corporate owner is liable to Krennerich for the damages resulting from the fall.
Defendant urges that the railing had been misused and abused during the party; that the rail was not designed to allow tenants or guests to sit or lean on it; and that applicable here is the rule of Glain v. Sparendeo, 119 La. 339, 44 So. 120 (1907), Montgomery v. Cantelli, 174 So. 2d 238 (La.App. 4 Cir. 1965), and Brown v. *846 Pons, 147 So. 560 (La.App.Orls.1933). These cases hold that the lessor is not an insurer of the safety of his tenants and his liability may not be extended to include damages for injuries resulting from an abnormal and unexpected use of the property. In Glain a railing gave way when the tenant was using it to lower furniture over the railing. In Montgomery, the tenant's child ate paint from the walls. In Brown, the tenant put unusual stress on the railing. These cases are distinguished for the reason that here the railing was used only for its normal expected usage.
Defendant argues that the defect was so apparent during the course of the party that Krennerich was negligent in failing to discover it. Further that Krennerich's expertise as a third year architectural student put him on notice that the railing might not be secure. We reject both contentions. The accident occurred at night and there is no indication that there was sufficient lighting to allow Krennerich to discover the defect. Several days before the accident Krennerich noted the problem caused by the return of the railing to the concrete block wall, but he did not find a loose railing. He noted that the connection to the wall might come loose from the concrete blocks. The concrete blocks did not give way. What gave way was the connection of the railing to the metal piece attached to the concrete block. This defect was not anticipated by the third year architectural student. As the trial court noted in written reasons, "... the evidence reflects that other persons had at prior times sat upon the rail without it breaking or collapsing. Whereas (Krennerich) may have been critical of this structure, I am not convinced that this made him cognizant of a defect which was imminently dangerous. His actions were not negligent ..." We agree.
Krennerich's medical expenses totaled $1,164.04. He was hospitalized for two weeks for treatment of the comminuted fracture of the head of the left radius and ulna and a linear fracture of the lumbar 2 and 3 vertebrae. When released he spent three more weeks in bed at home. When out of bed he had to wear a Jewitt back brace. The healing was excellent except for a floating piece of bone in the ulnar stilo. He has an eight to ten percent disability of his left hand. His treating physician discharged him "with no complaints whatsoever" some eight months post accident. Krennerich did not agree with this prognosis and testified that he continued to suffer after the discharge.
As a result of the fall Krennerich also suffered a fractured prosthesis (a broken bridge) which was repaired by his dentist.
There is no manifest error in the $6,500 award for pain, suffering and disability.
The trial court awarded the sum of $80 per week for eighteen weeks for loss of earnings. Defendant contends that this was speculative. We do not agree. Krennerich had worked during the summer before his third year of architecture and had assurance that he would be employed for the summer following the accident. The injuries prohibited his working during that summer. Additionally, he lost some time on his outside job which he held while a student. The award for loss of earnings is supported by the evidence and is affirmed.
The trial court judgment against defendant Wilmer C. Goss, Jr. is reversed. The judgment against defendant WCG Investment Corporation is affirmed. All costs both at trial and on appeal are assessed to defendant WCG Investment Corporation.
Affirmed in part. In part, reversed and rendered.
CULPEPPER, J., concurs and assigns written reasons.
*847 CULPEPPER, Judge (concurring).
The purpose of this concurring opinion is to make it clear that I agree with the legal position taken by the majority. Without discussion, the majority assumes that Mr. Goss, as manager of the apartment building and agent for the corporation which owned it, may be liable to a third party who is injured by Goss's failure to perform a duty which he owed to the corporation.
This is the identical legal issue presented in the recent so-called "executive officer" suits, in which I have consistently taken the position that an executive officer, or other agent of a corporation, can be liable to third parties for the breach of a duty owed to his principal, under certain conditions. See Spillers v. Northern Assurance Company of America, 254 So.2d 125 (3rd Cir. 1971) and cases discussed therein.
As stated in Spillers, a classic example of the situation where an agent can be liable to a third party for breach of a duty owed to his principal is the one presented in the present case, where an agent is manager of rental property and owes a duty to the owner to keep the property in repair. Where the agent's failure to perform this duty causes injury to a third party, recovery may be had against both the agent and the principal.
Nevertheless, I agree with the majority that under the facts in the present case Goss did not fail to perform his duty to keep the building repaired. The railing came loose because the tenants and their guests sat on it. Goss had no reasonable opportunity to discover and repair, prior to the accident, the defect in the welding which apparently caused the railing to break. Hence, Goss did not breach his duty to his principal. And, of course, he owed no duty to these injured third parties except in connection with his employment as managing agent of the building.
For the reasons assigned, I concur.