SAVOY, Judge.
This tort action arises out of an accident which occurred on December 26, 1971, in Crowley, Louisiana, when plaintiff, Mrs. Olive Bourque Gauthier, an elderly widow, fell as she was traversing a broken, fragmented section of the sidewalk. Made defendants were the City of Crowley; the abutting landowner, B. J. Cart, Jr., and his liability insurer, Allstate Insurance Company; and Reggie Concrete, Inc., and its insurer, Aetna Casualty and Surety Company. Third party demands were filed by each of the defendants against the other defendants. For written reasons assigned, the trial court held in favor of plaintiff and against Reggie Concrete, Inc., and its insurer, Aetna Casualty and Surety Company, and dismissed the third párty demands. From that judgment, Reggie and Aetna appealed suspensively to this court.
The record reveals that on December 21, 1971, five days prior to the accident, Cart, the abutting landowner, engaged one Sid Wilson, Sr. to pour a concrete slab on a carport that Cart was transforming into a *105 den. Wilson, who is a concrete finisher, and was doing the job on a “turn-key” basis, ordered the cement from Reggie, and the cement was delivered to the Cart premises in a large cement mixer truck. When the truck arrived at the premises, it backed across the sidewalk and came into the yard of Cart and then came back across the sidewalk. The truck became bogged down in Cart’s yard and had to be pulled out by a similar truck. This maneuvering resulted in the truck actually passing over the sidewalk four times. According to answers to interrogatories propounded by plaintiff to Reggie and Aetna, the truck in question had an unloaded weight of approximately 20,000 pounds, and the load of concrete it would carry would weigh 4,000 pounds per yard, so a load of four and three-fourths yards would weigh 19,000 pounds. Therefore, the toal weight of the truck and load was approximately 39,000 pounds, or approximately 20 tons.
Reggie strenuously contends that plaintiff failed to prove that Reggie’s truck cracked the sidewalk at the location of the accident. However, Mr. & Mrs. Cart unequivocally testified that the sidewalk was not cracked or broken at this location prior to the time that the Reggie truck went over it. Furthermore, ruts made in the yard and neutral ground by the truck coincide exactly in a straight line with the area where the sidewalk was broken, as was shown by testimony and demonstrated by photographs introduced into evidence.
On December 26, 1971, five days after the sidewalk was broken by Reggie, plaintiff attended a 4:30 P.M. mass at St. Michael’s Catholic Church in Crowley. According to plaintiff’s testimony, the mass usually lasted about 50 minutes, and she stayed for the entire mass, so she would have left the church at about 5:15 or 5:20 P.M., according to her estimate. She had walked to church from her home, and following the service was taking a leisurely stroll for exercise, and was proceeding east along East Fifth Street, a route that she had never taken before. Plaintiff crossed the main street of Crowley and walked three blocks to get to where the accident occurred. As she was walking along, and as she came to the location of the accident, which was on the sidewalk adjacent to the Cart property, the heel of her shoe caught in a hole in the defective sidewalk, causing her to fall heavily on her right side, causing injuries which will be hereinafter discussed in more detail.
The exact time of the accident is not known, but considering the fact that plaintiff arrived at the hospital at approximately 5 :30 P.M., which was very shortly after the accident, and the fact that she, according to her testimony, got out of church around 5:15 or so, tends to indicate that the accident probably happened around 5:20 to 5:25 P.M. Plaintiff introduced into evidence a chart prepared by the Nautical Almanac Office of the United States Observatory, and issued by the United States Government Printing Office, which shows that on December 26, 1971, the sun set at 5:19 P.M. This chart was properly admitted into evidence under the provisions of LSA-C.C.P. 1393. It was shown that the sidewalk in the area, of this accident was comparatively level and regular. Plaintiff testified, and other testimony also showed, that most of the sidewalks in the City of Crowley are in bad condition; but that this particular sidewalk was in a comparatively regular, or even, condition.
When the plaintiff was asked if she was looking where she was going', she replied:
“A. I was looking where I was going. I probably wasn’t looking as closely as I usually look, because the sidewalk appeared to be regular, you know.”
She was asked why didn’t she observe what proved to be a defective sidewalk and plaintiff replied:
“A. Oh well, it was dusk and it was covered with pine needles. . . . ”
The photographs that were introduced into evidence show an accumulation of *106 pine needles on the sidewalk, but these photographs were taken about two weeks after the accident. However, the testimony of both Mr. & Mrs. Cart established that pine needles fell .upon the sidewalk regularly and the sidewalk was customarily swept in front of their home two or three times a week to keep it clear of pine needles. However, the Carts were away from home for the Christmas holidays for at least two days before the accident, during which time the sidewalk wasn’t swept, so the existence of the pine needles as observed by plaintiff is in this sense corroborated by Mr. & Mrs. Cart.
A disinterested witness named Harold Dupont, saw the plaintiff fall and took her immediately to the hospital. Although his recollection was hazy as to many of the details, his recollection as to whether it was daylight or dark was “it was still light” To more fully quote from this witness’s testimony, we will note the following:
“Q. What were the lighting conditions—
A. It was light.
Q. — Night, day, or in between or what?
A. It was still light.”
In reviewing the testimony of this witness as a whole, this statement is not necessarily in conflict with that of the plaintiff. Obviously, by using the terms “still light,” this witness was saying that things could still be seen, although it was not full daylight. Actually, this statement, as a matter of fact, probably corroborates plaintiff’s testimony to the effect that it was dusk.
Insofar as the liability of the City of Crowley is concerned, the trial court was correct in holding the City of Crowley free from liability. It is well settled that a municipality is not liable for the acts of third parties who place obstructions in a public way or otherwise cause defects in a sidewalk, unless and only when the City is guilty of negligence by failing within a reasonable time after it has notice, actual or constructive, of the existence of the defective condition, to repair it. Lee v. Baton Rouge, 243 La. 850, 147 So.2d 868 (1963); Cook v. Shreveport, 134 So.2d 582 (La.App. 2nd Cir. 1961) (Cert. den. 1962), and cases cited therein. There is no evidence in the record to the effect that the City had actual or constructive notice of the condition that had only been in existence for five days, and the trial court did not commit manifest error in holding the City free of liability.
As to the liability of Cart, the abutting landowner, it is also clear that there is no liability on his part. The defective condition did not exist until December 21, and Mr. Cart’s only role in the creation of the crack in the sidewalk was the fact that he had made a “turn-key” contract with Sid Wilson, Sr. Cart was not on the premises while the work was being done, and had no control over the manner in which the concrete was unloaded from Reggie’s truck, or any other phase of the job.
The jurisprudence is to the effect that unless there is a specific duty imposed by statute or ordinance, an adjoining landowner is not responsible for defects or deterioration in the sidewalk near his premises, unless he creates a hazard or condition on the sidewalk or performs some negligent act which would cause danger to a pedestrian. See Arata v. Orleans Capital Stores, 219 La. 1045, 55 So.2d 239 (1951). Therefore, we are not prepared to state that the lower court committed manifest error in its holding that neither Cart nor his liability insurer, Allstate, were liable to plaintiff for this accident.
As stated above, the trial court held that the proximate cause of the accident was the breaking of the sidewalk by Reggie Concrete, Inc., and its failure to repair it before people, such as plaintiff, might injure themselves by using the sidewalk as they had a right to do. Therefore, unless *107 we hold that the trial court committed manifest error in holding that plaintiff was not guilty of contributory negligence, we must affirm the judgment herein. It is obvious from the briefs filed herein and the argument of counsel that the question of contributory negligence is the primary issue in this case.
As to the duty of- one traveling upon public streets and sidewalks, the Louisiana Supreme Court, in the often cited case of McCormack v. Robin, et al., 126 La. 594, 52 So. 779 (1910) made the following statement at 126 La. 598, 52 So. 780:
“No doubt, the person injured may, by his own negligence, so contribute to the injury as to preclude the recovery of damages, but streets and sidewalks are intended for free and constant use and those who use them have the right to assume that they are safe, and they are not expected to exercise the care which would be required in traversing a jungle. As has been held by this court: ‘All that is required of a pedestrian upon the street is ordinary care, and this does not necessitate his looking constantly where he is going. * * * He has the right to assume that the roadway is safe for travel.’ Weber v. Union, etc., Co., 118 La. 77, 42 So. 652 (syllabus).”
The court also quoted from the also often cited case of Rock v. American Construction Co., et al., 120 La. 831, 45 So. 741 (1908), wherein it was said:
“We do not find that there was any such want of care on the.part of the plaintiff as to preclude his recovery. With his poor eyes and his basket on his head he was not particularly well situated to discover the hole into which he walked, but the sidewalk is intended for such as he, as well as for those with good eyes and. who carry no baskets, and he had the right to assume, within reasonable limits, that, if it had been made unsafe, those who made it so would warn him of the fact or protect him from the danger.”
See also the case of Corkern v. Travelers Ins. Co., 229 La. 592, 86 So.2d 205 (1956) wherein the Supreme Court enunciated the rules set forth in the Rock case, supra, and cited it with approval, reversing a judgment of the Court of Appeal which had in turn reversed a trial court judgment for the plaintiff.
A case similar in some respects to the case at hand is the case of Parker v. City of New Orleans, 1 So.2d 123, (Or.App.1941), wherein the Court of Appeal held that the conclusion of the trial court was justified in holding that the plaintiff pedestrian was not guilty of contributory negligence because the defect in the curbing was covered with leaves so that she could not, by casual glance or inspection, detect it. See also the case of Merchant v. Montgomery Ward and Co., 83 So.2d 920 (1st Cir. 1955) wherein the court held that the plaintiff was not contributorily negligent for failing to see the piece of chain that caused her to fall, in view of the fact that the chain and some gravel were mixed together, thereby making the chain difficult for plaintiff to see.
Counsel for appellants has cited many cases wherein it was held on appeal that the plaintiff was contributorily negligent. Counsel of appellee has likewise cited many cases wherein it was held that plaintiff was not contributorily negligent.
A study of these cases necessarily leads us to the conclusion that the issue of contributory negligence depends on the particular facts and circumstances of each accident. As was said in the case of Merchant v. Montgomery Ward & Co., supra, at 83 So.2d 924:
“Whether an obstruction or defect creates an obvious hazard which the pedestrian should have observed and avoided; whether on the other hand it was a hazard in the nature of a trap, which would not alert the eye of the pedestrian of ordinary care to danger, occupied as it is entitled to be with myriad other observations besides the ground in front; de *108 pends not primarily on objective criteria of size, situation, color (useful as these are in determining the visual data from which the pedestrian may deduce danger), but rather upon all the surrounding circumstances in which that particular pedestrian finds himself at the time of the accident — the traffic, the sun in his eyes, the shadows, his familiarity with the hazard, as well as its size, situation, color, etc.” (Emphasis ours)
The burden of proof was upon Reggie and its insurer to prove by a preponderance of the evidence that Mrs. Gau-thier was contributorily negligent. Considering all the circumstances of the case, including the fact that the sidewalk was relatively level in the area of the accident, the visibility at the time of the accident, the fact that pine needles were upon the sidewalk, and other factors, including the legal principle that plaintiff was entitled to assume the sidewalk free of hazards, we cannot state that the trial court committed manifest error in holding that the defendants-appellants failed to sustain their burden of proving Mrs. Gauthier contributorily negligent.
On the issue of quantum, the record shows that as a result of the accident, plaintiff sustained an impacted fracture of the surgical neck of the right humerus (upper arm bone) with some comminution of the head of the humerus. She also had what appeared to be a tendinitis (inflammation of the tendons) of the right wrist. Plaintiff also sustained fractures of the fifth and sixth ribs on the right side. Plaintiff was hospitalized for twenty-six days immediately following the accident, and was under the treatment of Dr. C. C. Matirne, a general practitioner, until July 18, 1972. During this period of time, plaintiff underwent intensive physical therapy. She was also seen by two orthopedists practicing in Lafayette, Dr. Fred C. Webre, and Dr. James H. Larriviere. Dr. Larriviere examined the plaintiff at the request of the attending physician, Dr. Ma-tirne, and saw her on five occasions, the last one being on September 11, 1972. Dr. Larriviere testified that one of the complications in the case was due to the fact that the plaintiff had a reaction to anti-inflammatory medications, which delayed her recovery somewhat. As stated above, Dr. Larriviere last saw plaintiff on September 11, 1972, at which time her condition had become fairly well stabilized. Dr. Larri-viere estimated that the plaintiff would have a permanent disability of ten percent of the shoulder, which is substantially in accord with the evaluation of Dr. Webre, who examined plaintiff on November 8, 1972, at the request of counsel for defendants-appellants.
The record reveals that unquestionably the plaintiff incurred intense pain, and the intensive physical therapy was also uncomfortable and painful. The trial court awarded plaintiff $10,000.00 general damages for plaintiff’s pain, suffering and permanent disability. Special damages for medical expenses were stipulated by the parties to be $1,960.40. Appellants contend the award of general damages is excessive.
In Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971), the Supreme Court stated (246 So.2d 19):
“From these decisions, two principles emerge: (1) To modify the amount of an award for general damages, an appellate court must find that the trial judge or jury has abused the “much discretion” accorded by the codal provision: (2) The awards in other cases serve only as an aid in determining whether there has been an abuse of discretion and rivet no steel frame of uniformity.
“Applying these principles to a personal injury award often presents real difficulty. The facts relating to the injuries must be collated in each case. Upon these facts, the Court must focus an informed judgment, tempered by a fair recognition of the discretion vested in the trial judge or jury.”
*109 Bearing the foregoing principles in mind, we cannot say from our review of the record that the award of general damages to plaintiff constitutes an abuse of the great discretion vested in the trier of fact.
For the foregoing reasons, the judgment of the trial court is affirmed, with appellants to pay all costs.
Affirmed.