351 So.2d 1218 (1977)
Alexon LANCLOS et al., Plaintiffs and Appellees,
v.
Robert S. TOMLINSON, Jr., et al., Defendants and Appellants.
No. 6023.
Court of Appeal of Louisiana, Third Circuit.
June 30, 1977.
Rehearing Denied August 1, 1977.
Writ Refused October 26, 1977.
*1219 Dubuisson, Brinkhaus & Dauzat by Jerry J. Falgoust, Opelousas, for defendants and appellants.
Taylor & Trosclair by Frank P. Trosclair, Jr., Opelousas, for plaintiffs and appellees.
Lewis & Lewis by John M. Shaw, Opelousas, for third party defendant-appellee.
Before CULPEPPER, WATSON and STOKER, JJ.
*1220 CULPEPPER, Judge.
Plaintiff, Pearl Lanclos, and her husband, Alexon Lanclos, seek damages for personal injuries sustained by Mrs. Lanclos when she fell while attempting to cross a small wooden bridge spanning a roadside ditch. The bridge provided ingress and egress to a lot and rental dwellings owned by the principal defendants, Robert S. Tomlinson, Jr. and Allen T. Tomlinson. The principal defendants filed a third party demand against the City of Opelousas (the City) and its insurer seeking indemnification or contribution from the City in the event the principal defendants were found liable. The trial court rendered judgment against the principal defendants and their insurer, but rejected the third party demand against the City and its insurer. The principal defendants appealed. Plaintiffs answered the appeal, seeking an increase in damages.
The substantial issues are: (1) Was there a reasonable evidentiary basis for the trial court's conclusion that a latent defect in the bridge planking was the cause of plaintiff's fall? (2) Did the trial court err in applying the doctrine of strict liability, embodied in Articles 670, 2322, 2693 and 2695 of our Civil Code, to this defective bridge which was not located on defendant's property? (3) Are defendants liable in tort?

GENERAL FACTS
Robert Tomlinson and his brother, Allen Tomlinson, purchased a tract of land on December 24, 1973 described as Lot No. 1 of Block 4 of the Colorado-Southern Subdivision in the City of Opelousas, Louisiana. This rectangular corner lot is bounded on the west by Arkansas Avenue and on the north by U.S. Highway 190. It has a frontage of 50 feet on Highway 190 and of 150 feet on Arkansas Avenue.
At the time of the accident, two houses were situated on the lot. One faced U.S. Highway 190 and the other faced Arkansas Avenue. Mr. and Mrs. Noah Bourque were living in the house facing Arkansas Avenue at the time of the accident. This house was leased by the Tomlinsons to Bertha Bourque, the daughter of the tenants.
Plaintiffs lived in a house across Arkansas Avenue from the Bourque residence. Often plaintiff would walk to the Bourque house to get food scraps to feed her pig. Her usual route was through her back yard, across Arkansas Avenue, and finally over a small wooden bridge spanning a shallow ditch which ran along the eastern edge of the graveled portion of Arkansas Avenue.
To the casual observer, it would appear that the eastern edge of the small wooden bridge rested on the front yard of the Bourque residence, and the western edge of the bridge rested on the easternmost part of Arkansas Avenue. The edge of the bridge nearest the Bourque residence was only nine feet away from the porch of the house. Actually, however, surveys showed the bridge and ditch were situated entirely within the right of way of Arkansas Avenue, and did not abut defendants' property.
Arkansas Avenue is a city street with a 60-foot right of way. The graveled portion along the center has a width of about 20 feet. The ditch, about one and one-half feet deep and four feet wide, runs along the eastern edge of the graveled portion. Thus, the right of way boundary is about 14 feet beyond the bridge and ditch.
The porch of the Bourque house encroaches 5.4 feet onto the Arkansas Avenue right of way.
On June 8, 1974, plaintiff fell and injured her leg while crossing the bridge on her return trip from the Bourque house. She was carrying a bucket of slop for her pig. There were no other witnesses to the accident, but plaintiff testified she fell through the bridge when one of its planks broke under her weight. Though there is some dispute as to the condition of the bridge, the trial court found the defect in the bridge was latent, and plaintiff was not crossing the bridge in a negligent manner.
The bridge in question was built by Wilfret Anderson more than 20 years before the accident. It was a simple wooden frame structure with no handrails. Its surface consisted of wooden planks attached to cross beams. At the time Anderson built *1221 the bridge, he was a resident of one of the lease houses on the property. The record shows that from the time the bridge was built, it was repaired only once. These repairs were performed about 20 years before the accident by the present lessee, Noah Bourque, and the plaintiff, Alexon Lanclos.
Both defendants testified that prior to the date of the accident they did not know the bridge in question existed. The Tomlinsons further testified that prior to the accident they had never inspected the property. They stated their father acted as their agent in negotiating the purchase of the property, and that not even he viewed the property prior to the date of the accident. Defendants did not construct or maintain the bridge.
Once or twice a year, city crews cleaned the drainage ditch. In the course of their cleaning operations, the crew would lift the small platform-type bridge and set it aside to clean the portion of the ditch under the bridge. After cleaning operations were completed, the bridge was replaced in the same spot it had been before. In 1974, the year of the accident, the City work crew did not remove the bridge because someone, apparently Noah Bourque, told the crew he would clean under the bridge.
The city instructed its road crews to remove any bridges found to be unsuitable or dangerous. In 1974 and prior years the city road crews did not consider the subject bridge to be unsuitable or dangerous.
Apparently, the city has never used the full 60-foot width of the Arkansas Street right of way.

CONDITION OF THE BRIDGE
The first issue is whether there is a reasonable evidentiary basis for the trial court's conclusion that a latent defect in the bridge planking was the cause of plaintiff's fall. There is some dispute in the evidence as to whether the bridge was in good condition or was instead falling apart at the time of the accident. Pictures introduced into evidence show a very dilapidated wooden bridge with six to eight inch gaps where planks had fallen off or are only partially attached to the supports. There is some question, however, as to whether these are pictures of the bridge which was in place at the time of the accident. In any event, the trial court concluded: (1) Plaintiff walked on the side of the bridge where there were no gaps between the planks and not the more dangerous side of the bridge with large gaps. (2) Plaintiff stepped on a plank which either gave or broke under her weight. (3) The defect in the bridge was a latent one rather than an apparent one, and could not have been discovered on a simple inspection of the bridge. (4) Plaintiff was not crossing the bridge in a negligent manner at the time of the accident.
Though there is conflicting testimony about the condition of the bridge, the above findings of the trial court are supported by a reasonable evidentiary basis and should not be disturbed on appeal.

STRICT LIABILITY
In Krennerich v. WCG Investment Corporation, 278 So.2d 842 (La.App.3rd Cir. 1973), we stated the following rule:
"An owner-lessor is held to strict liability, i. e., liability without fault, for personal injuries sustained by his tenants or others through the defective condition of the premises; neither the landowner's ignorance of the defects nor its latency will defeat the injured person's recovery. LSA-C.C. Articles 670, 2322, 2693 and 2695."
The trial court quoted this same language from Krennerich in holding the Tomlinsons strictly liable for injuries sustained by plaintiff while crossing the bridge. We think the trial court erred in its application of the Krennerich case and the four Code Articles cited there.
There is no legal basis for holding defendants strictly liable for injuries sustained on a defective bridge not located on or attached to their property and which was not proved to be built, owned, maintained or leased by defendants. A reading of the *1222 cited Code Articles reveals their inapplicability to the present case:
"Art. 670. Every one is bound to keep his buildings in repair, so that neither their fall, nor that of any part of the materials composing them, may injure the neighbors or passers-by, under the penalty of all losses and damages, which may result from the neglect of the owner in that respect.
"Art. 2322. The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.
"Art. 2693. The lessor is bound to deliver the thing in good condition, and free from any repairs. He ought to make, during the continuance of the lease, all the repairs which may accidentally become necessary; except those which the tenant is bound to make, as hereafter directed.
"Art. 2695. The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.
The above quoted articles limit imposition of strict liability to only those cases where (1) the defendant owns the building which causes damages (Articles 670 and 2322) or (2) the damages result from vices or defects in the thing leased (Articles 2693 and 2695). Thus, these code articles have no application where the defective thing is neither owned nor leased by the defendant. The injured plaintiff who grounds his claim on the strict liability imposed by the quoted articles has the burden of proving the defendant was the owner or lessor of the defective thing. See Levi v. Crescent City Seltzer & Mineral Water Company, 2 La.App. 286 (Orl.App.1925).
The defendants denied ownership of the bridge and the plaintiffs failed in their burden of proving otherwise. There is no evidence to support an assertion that defendants owned the bridge. Defendants did not build the bridge. The bridge was built by Wilfret Anderson, a former resident of one of the leased houses. Defendant did not buy the bridge. Although the bridge may have been an immovable by nature or by destination, defendants did not acquire it when they purchased the subject lot and house because the bridge was not situated on the subject property.
The defendants denied that the bridge was included as a part of the "thing leased" (i. e., the lot and dwellings), and plaintiffs failed in their burden of proving otherwise. At the time of the accident, defendants were leasing the subject property to Bertha Bourque under the terms of an oral lease. The specific terms of the oral lease were not disclosed at trial. There was no evidence that the bridge was intended to be included in the lease. In the absence of specific lease provisions or other evidence to the contrary, we must presume defendants leased only the property which they owned. Defendants owned only Lot 1 of Block 4 of the Colorado-Southern Subdivision and the improvements thereon. They did not own the bridge.
Since defendants were neither the owners nor the lessors of the bridge, strict liability cannot be imposed under Articles 670, 2322, 2693 and 2695. If we were to hold otherwise, we would expand the codal concept of strict liability beyond its intended scope.
Though there have been expansive interpretations of the word "building(s)" in Articles 670 and 2322 to include such things as wharves attached to houses, we know of no cases expanding that term to encompass structures situated entirely on the property of another with no physical connection to defendant's building or property. See, for example, Cothern v. LaRocca, 255 La. 673, 232 So.2d 473 (La.1973); Cristadoro v. Von Behren's Heirs, 119 La. 1025, 44 So. 852 (1907); Allain v. Frigola, 140 La. 982, 74 So. 404 (1917); see also Quintanilla v. Chateau Louisiana, Inc., 392 F.Supp. 510 (E.D.1975).

*1223 LIABILITY IN TORT
Having concluded there is no legal basis for imposition of strict liability, we next address plaintiff's argument that defendants are liable in tort under Article 2315 of the Civil Code.
In the absence of a specific duty imposed by statute or ordinance, an abutting property owner is not responsible for injuries sustained as a result of a defect in the adjoining street or sidewalk unless he creates the hazardous condition or endangers the pedestrian by his negligence. Arata v. Orleans Capital Stores, 219 La. 1045, 55 So.2d 239 (1951) and cases cited therein; Gauthier v. Aetna Casualty & Surety Company, 286 So.2d 103 (La.App.3rd Cir. 1973).
Under the "reasonable man" standard, the lessor-landowner may have a duty to warn his tenants of observable defects on adjoining premises or at points of ingress and egress. See Cothern v. LaRocca, supra. Assuming, without deciding, that defendants breached a duty owed to plaintiff by not inspecting the bridge, defendants are nevertheless not liable to plaintiff for her injuries. Since under the trial judge's findings, any defects in the bridge were latent rather than apparent, the defendants' failure to inspect the bridge is not a legal cause of the accident. An inspection of the bridge would not have revealed its latent defects.
Having concluded there is neither a basis for the application of strict liability nor any basis for imposition of liability under the general tort provisions, we must reverse the judgment of the trial court holding defendants liable for plaintiffs' damages.

LIABILITY OF THE CITY
The trial court rejected the principal defendants' third party demand against the City on the grounds that the City had neither actual nor constructive notice of the defect in the bridge. We need not reach the issue of the City's liability to the principal defendants as we find the principal defendants are not liable to plaintiff. Plaintiff did not name the City as a party defendant.
For the reasons assigned, the judgment appealed is reversed and set aside. Judgment is hereby rendered in favor of defendants-appellants rejecting plaintiffs' demands and dismissing their suit. All costs in the trial and appellate courts are assessed against the plaintiffs-appellees.
REVERSED AND RENDERED.
WATSON, J., concurs in the result.