634 So.2d 1337 (1994)
Cynthia HODGE, Plaintiff-Appellant,
v.
LIQUID VENTURES, et al., Defendants-Appellees.
No. 93-902.
Court of Appeal of Louisiana, Third Circuit.
March 2, 1994.
David Russell Bankston, Lafayette, for Cynthia Hodge.
Franklin White Dawkins, Lafayette, for Liquid Ventures, Inc. et al.
D.C. Panagiotis, Thomas H. Morrow, Lafayette, for HUB Enterprises, Inc.
Jacqueline Meier Panagiotis, Lafayette, for Aguilar & Associates Real Estate Inc.
Kenneth Michael Henke, Lafayette, for Essex Ins. Co.
Robert A. Lecky, Lafayette, for National Asset Bank and Scottsdale Ins.
Before GUIDRY, LABORDE and THIBODEAUX, JJ.
GUIDRY, Judge.
Plaintiff, Cynthia Hodge, appeals two rulings by the trial court granting motions for *1338 summary judgment filed by National Asset Bank (NAB), the owner of the Common Point Shopping Center in Lafayette, and its insurer, Scottsdale Insurance Company; and, Aguilar and Associates Real Estate, Inc. (Aguilar), the property management company for the owners, and their insurer, Aetna Casualty and Surety Company (Aetna), in connection with a battery plaintiff allegedly sustained in the shopping center parking lot during the early morning hours of August 10, 1990. We affirm.

FACTS
On the evening of August 9, 1990, plaintiff, Cynthia Hodge, accompanied by her boyfriend, Chris Washispack, went to "Signatures", a night club in the Common Point Shopping Center in Lafayette. Washispack was employed by Signatures as a bouncer but was not working the night in question. After the club closed at 2:00 a.m. (August 10, 1990), plaintiff and several girlfriends were standing outside waiting for their escorts when a "jeep" type vehicle containing four men drove up. Words were exchanged as the young ladies' boyfriends came out of the club. Thereafter, two occupants of the "jeep" exited the vehicle and a fight ensued.
At first, plaintiff was not physically involved in the melee, but limited her participation to yelling. At some point, she broke away from her friends who were restraining her, ran up to the rear of the man who was fighting with her boyfriend and grabbed, slapped, pushed or some other way made physical contact with him. At that point, her boyfriend's adversary turned around and punched plaintiff in the face, knocking her to the ground. The injuries she sustained as a result of this incident form the basis for this suit.
Plaintiff's cause of action against defendants herein is based upon their alleged failure to provide adequate security at the shopping center. Ms. Hodge urges that NAB and Aguilar had voluntarily assumed the duty to protect the patrons of the shopping center and that this assumed duty was not performed with due diligence. On the other hand, appellees urge that they never assumed any duty to protect patrons of the shopping center and, in any event, such security measures undertaken by defendants were discontinued and responsibility therefor transferred to tenants of the shopping center, including Signatures, prior to the incident in question. Aguilar further urges that inasmuch as they were managers of the property and could make no decisions without NAB's approval, Aguilar could not have more responsibility than NAB. The trial court, without supporting reasons oral or written, granted summary judgments dismissing plaintiff's suit against NAB, Aguilar and their insurers. Plaintiff appealed.

OPINION
Perhaps the mostly widely quoted authority on summary judgment is found in Vermilion Corporation v. Vaughn, 397 So.2d 490 (La.1981), wherein the court stated:
A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La.C.C.P. art. 966. Because the mover has the burden of establishing that no material factual issue exists, inferences to be drawn from the underlying facts contained in the materials before the court must be viewed in the light most favorable to the party opposing the motion. Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); Mashburn v. Collin, 355 So.2d 879 (La.1977). To satisfy his burden the mover must meet a strict standard by a showing that is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. Adickes v. S.H. Kress & Co., supra; Sartor v. Arkansas Nat. Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1944). The papers supporting mover's position are closely scrutinized, while the opposing papers are indulgently treated, in determining whether the mover has satisfied his burden. Adickes v. *1339 S.H. Kress & Co., supra; 6 Moore's Federal Practice, § 56.15[3]. Id. at 493.
In this case, plaintiff seeks recovery against NAB, Aguilar and their insurers under La.C.C. art. 2315 for violation of the latters' assumed duty to provide security of the parking lot area at Common Point for the protection of its lessee's guests or invitees.
At the outset, we observe that, as a matter of law, a landowner/lessor owes no duty to guests or invitees of its lessee, to protect them against misconduct of third persons in the absence of an assumed duty by the owner/lessor to provide security. As stated in Landry v. St. Charles Inn, Inc., 446 So.2d 1246 (La.App. 4th Cir.1984):
It is a well recognized principle of tort law that there is no duty to control the conduct of a third person so as to prevent him from causing physical harm to another unless a special relation exists between the actor and the other which gives the other a right to protection. Restatement (Second) of Torts, § 315. Innkeepers and guests stand in a special relation to each other (hence St. Charles Inn's liability in this case), as do common carriers and their passengers. Id. at 1250.
The absence of a legal duty by a landowner/lessor under such circumstances is not a legal consequence of La.C.C. art. 2703 but rather, is a consequence of well settled general tort principles. Potter v. First Federal Savings & Loan Association of Scotlandville et al., 615 So.2d 318 (La.1993).
In Mundy v. Department of Health and Human Resources, 620 So.2d 811 (La. 1993), a case involving an alleged breach of duty to supply adequate security, the court explained:
In order to determine whether liability exists under the facts of a particular case, our court has adopted a duty-risk analysis. Under this analysis plaintiff must prove:
(1) the conduct in question was the cause-in-fact of the resulting harm
(2) defendant owed a duty of care to plaintiff
(3) the requisite duty was breached by the defendant
(4) the risk of harm was within the scope of protection afforded by the duty breached

Faucheaux v. Terrebonne Consolidated Government, 615 So.2d 289 (La.1993); Mart v. Hill, 505 So.2d 1120, 1122 (La. 1987). Whether a duty is owed is a question of law. Faucheaux, 615 So.2d at 292; Harris v. Pizza Hut of La., Inc., 455 So.2d 1364, 1371 (La.1984). Whether defendant has breached a duty owed is a question of fact. See Annis v. Shapiro, 517 So.2d 1237 (La.App. 4th Cir.1987). In general, the owner or operator of a facility has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm. St. Hill v. Tabor, 542 So.2d 499, 502 (La.1989); Harris, 455 So.2d at 1369; Walker v. Union Oil Mill, Inc., 369 So.2d 1043, 1047 (La.1979). The relationship of an employer to his employee gives rise to a similar duty. See Restatement (Second) of Torts § 314A comment (a) (1965). This duty does not extend to unforeseeable or unanticipated criminal acts by third persons. Harris, 455 So.2d at 1371. However, when a duty to protect others against such criminal misconduct has been assumed, liability may be created by a negligent breach of that duty. Id. at 813.
The latter assumed duty was more fully explained by the court in Harris v. Pizza Hut of Louisiana, Inc., et al., 455 So.2d 1364, 1369 (La.1984):
A duty of protection which has been voluntarily assumed must be performed with due care....
Whether violence which results from the breach of such a duty is reasonably foreseeable and a cause-in-fact of an injury to a third person is a jury question.
... A business which undertakes to hire a security guard to protect itself and its patrons is liable for physical harm which occurs because of negligence on the part of that guard....
When a security guard fails to act in accordance with established policies and procedures and that negligence is a substantial factor in bringing about injury to a *1340 third party, it can support a jury finding of causation.... (citations omitted).
It is undisputed from the depositions and evidence submitted in this case that, at the time of the incident in question, appellees had not assumed any duty to protect the patrons of their lessees at Common Point.
Portions of the deposition of Ms. Jerrilyn Vasta, a senior vice president with Aguilar, were submitted by both sides. Her testimony in that deposition is unrefuted. At the time Aguilar took over management of the Common Point property for NAB, the property was "very vacant" and "to cut down on the vandalism" Aguilar, with the permission of NAB, contracted for security service. She went on to state that during the summer of 1990, NAB felt that there were sufficient tenants at Common Point to warrant the tenants becoming responsible for their own security. NAB's rationale for this change in policy was that since the tenants were the reason for needing the security, they should be responsible for its cost.
It appears that several meetings were held between the principals over the issue of security. From Ms. Vasta's deposition, it is clear that only one of the three tenants' leases required the tenant to provide security. The other two leases were silent in that regard. In any case, by a letter dated July 25, 1990, the tenants were notified that as of August 1, 1990, NAB would no longer provide security and that each tenant would be required to provide security "both within the premises and outside the club, including the parking lot area ...". Each of the three nightclubs in the shopping center were to be held liable "... for damage by the club's clientele to other Lessor/tenant property". There is no indication in the record that the management or owners of the nightclubs refused this responsibility or challenged the owner's right to change the security policy.
Thus, as of August 1, 1990, neither NAB nor Aguilar had assumed a duty to provide security at Common Point. Their only duty to their tenants and their tenants' customers was the duty imposed by general tort law.
The facts in this case are undisputed. The only issue to be decided in connection with the motions for summary judgment was whether, under these facts, did NAB and Aguilar owe any duty to protect plaintiff from the tortious act of her assailant. The issue to be decided presents only a question of law.
The trial judge found that no duty was owed. Based upon the law and jurisprudence reviewed above, we agree with the trial judge. While NAB and Aguilar, as its agent, may have had an assumed duty to protect plaintiff prior to August 1, 1990, it is clear they had no such duty after July 31, 1990, as any duty they had previously assumed had been delegated to and accepted by their lounge-owners-tenants, effective August 1, 1990. The incident in question did not take place until the early morning hours of August 10, 1990, some ten days later.
Accordingly, for the reasons stated, the judgments of the trial court are affirmed. Costs of this appeal are taxed to appellant.
AFFIRMED.