747 So.2d 77 (1999)
Danny D. BEZET
v.
The ORIGINAL LIBRARY JOE'S, INC., Leeway Corp., d/b/a "Slinky's," Spanish Moon, Inc. d/b/a "the Bayou," Highland Coffees, Barco Enterprises, Inc., d/b/a "the Chimes," River City Entertainment, Inc. d/b/a Varsity Theatre, Louie's Café, Inc., Tigertown Associates, L.L.C., A, B, C, D, E, F, G, H as Unknown Liability Insurers of Defendants and Jason Christopher Lavigne.
Todd Moonshower
v.
The Original Library Joe's, Inc., Leeway Corp., d/b/a "Slinky's," Spanish Moon, Inc. d/b/a "the Bayou," Highland Coffees, Barco Enterprises, Inc., d/b/a "the Chimes," River City Entertainment, Inc. d/b/a "Varsity Theatre," Louie's Café, Inc., Tigertown Associates, L.L.C., Four by Two Development, Inc., St. Paul Reinsurance, State Farm Insurance, Scotsdale Insurance, A, B, C, D, E, as Unknown Liability Insurers of Defendants and Jason Christopher Lavigne.
Nos. 98 CA 1467, 98 CA 1468.
Court of Appeal of Louisiana, First Circuit.
June 25, 1999.
Order Amending Opinion July 19, 1999.
Rehearing Denied September 1, 1999.
*78 Joseph W.P. Hecker, Karen La Count, Baton Rouge, Counsel for Plaintiff/Appellant Danny D. Bezet.
A. Gregory Rome, Baton Rouge, Counsel for Plaintiff/Appellant Todd Moonshower.
*79 Joseph A. Anselmo, Baton Rouge, Counsel for Defendant/Appellee The Original Library Joe's, Inc.
James J. Kokemor, Metarie, Counsel for Defendant/Appellee Scottsdale Insurance Company.
Dominic Ovella, Lawrence E. Larmann, Metaire, Counsel for Defendant/Appellee Tigertown Mall, L.L.C.
William M. Bass, Simone Dupré, Lafayette, Counsel for Defendant/Appellee Spanish Moon, Inc., d/b/a The Bayou.
Amos H. Davis, Baton Rouge, Counsel for Defendants/Appellees The Chimes, Highland Coffees and The Varsity.
Francis Bo Rougeou, Baton Rouge, Counsel for Defendant/Appellee Jason Christopher Lavigne.
A. Michael Dufilho, Robert W. Barton, Baton Rouge, Counsel for Defendant/Appellee Four By Two Development, L.L.C.
Dawn T. Trabeau Mire, Carey J. Guglielmo, Baton Rouge, Counsel for Defendant/Appellee Louie's Café.
Keith P. Richards, Baton Rouge, Counsel for Defendant/Appellee Leeway Corporation d/b/a Slinky's.
Hillar C. Moore, III, Baton Rouge, Counsel for Defendant/Appellee River City Entertainment d/b/a Varsity Theatre.
Before: CARTER, C.J., SHORTESS and WHIPPLE, JJ.
WHIPPLE, J.
These consolidated appeals arise from the trial court's granting of summary judgments in favor of five local defendants (Cadex, Inc. d/b/a Highland Coffees, Barco Enterprises, Inc. d/b/a The Chimes, River City Entertainment, Inc. d/b/a The Varsity, Spanish Moon, Inc. d/b/a The Bayou, and Leeway Corporation d/b/a Slinky's) and dismissing the claims of plaintiffs, Danny Bezet and Todd Moonshower, against them. For the foregoing reasons, we affirm in part and reverse in part.

PROCEDURAL BACKGROUND
Plaintiffs filed these consolidated suits for damages for injuries they received when they were attacked and stabbed in an alleyway and parking lot area located in proximity to several businesses. The plaintiffs named as defendants: their attacker, Jason Lavigne; several, but not all, of the businesses operating in the vicinity of the parking lot; and the alleged owners of the alleyway and parking lot area in which the attack occurred.
Plaintiffs named seven business enterprises as defendants: The Original Library Joe's, Inc. ("Library Joe's"); Leeway Corporation d/b/a "Slinky's" ("Slinky's"); Spanish Moon, Inc. d/b/a "The Bayou" ("The Bayou"); Cadex, Inc. d/b/a "Highland Coffees" ("Highland Coffees"); Barco Enterprises, Inc. d/b/a "The Chimes" ("The Chimes"); River City Entertainment, Inc. d/b/a "Varsity Theatre" ("Varsity Theatre"); and Louie's Café, Inc. ("Louie's Café"). Although plaintiffs had patronized only two of these businesses on the night of the attack and although there are many other businesses in the vicinity of the attack (who seemingly could also be named defendants under plaintiffs' theories), as explained at oral arguments on appeal, plaintiffs named these particular seven businesses as defendants for two specific reasons. First, plaintiffs alleged, the patrons of these businesses customarily used this parking lot area, and secondly, 18 months prior to the attack, these businesses had employed a regular security patrol for an area encompassing their individual businesses, the parking lot and alleyway, and other areas not involved in the events at issue in this case.
In addition to these businesses and the attacker, plaintiffs named three property owners as defendants: Tigertown Associates, L.L.C., the alleged owner of a part of the parking lot; Four By Two Developments, L.L.C., also the alleged owner of a part of the parking lot and alleyway; and The Losavio Trust and Peter J. Losavio, *80 Jr., the alleged owners of part of the alleyway.[1]
Bezet and Moonshower alleged in their petitions that all defendants were negligent and liable, in solido, for failure to provide adequate lighting in the alleyway (where the attack allegedly started), failure to provide adequate security measures to protect their patrons, failure to continue the joint security patrol cancelled approximately 18 months prior to the attack and failure to warn patrons of the dangerous and hazardous conditions that defendants knew or should have known existed.[2]
Subsequently, the Bezet and the Moonshower suits were consolidated.
Louie's Café filed a motion for summary judgment, which was heard on December 1, 1997, with judgment being orally rendered in its favor on that date. A written judgment in favor of Louie's Café was signed on April 15, 1998 and is the subject of a companion consolidated appeal, Bezet v. The Original Library Joe's, Inc., 98-1465 c/w 98-1466 (La.App. 1st Cir.6/25/99); 747 So.2d 74, also rendered this date.
Seven other defendants also filed motions for summary judgment. These defendants include Slinky's, The Bayou, Highland Coffees, The Chimes, Varsity Theatre, Tigertown Associates and Four By Two. These motions for summary judgments were heard on March 16, 1998, with judgment being orally rendered in favor of all movers, except Tigertown Associates and Four By Two. The judgment involving the seven defendants was also signed on April 15, 1998 and is the subject of the instant consolidated appeals.
Tigertown Associates and Four By Two applied to the First Circuit for writs of certiorari and review, challenging the trial court's denial of their motion for summary judgment. Those writs were denied, Bezet v. The Original Library Joe's, 98 CW 1264 and 98 CW 1279 (La.App. 1st Cir. 10/22/98). Accordingly, the claims against Tigertown Associates and Four By Two are still pending in the lower court awaiting trial. Additionally, Library Joe's, the Losavio Trust and Jason Lavigne did not file motions for summary judgment, and plaintiffs' claims against them are also still pending in the lower court.
Plaintiffs appeal, contending the trial court erred in granting summary judgment herein in favor of the business enterprise defendants.

FACTS
On April 20, 1996, plaintiffs, Todd Moonshower and Danny Bezet, spent the evening socializing at a friend's house in Baton Rouge, Louisiana. Shortly after midnight, on April 21, 1996, Moonshower, Bezet and a few of their friends decided to "go out" in an area of town just north of the gates of Louisiana State University at Highland Road. This area has several drinking establishments in an approximate two block area.
When the party arrived in the vicinity, plaintiffs and their friends parked their automobile in a parking lot situated in the block between West Chimes Street and West State Street near Highland Road.[3] Bezet, Moonshower and their friends walked to Slinky's, an area bar on West Chimes Street. Moonshower stayed at Slinky's until near closing time. Bezet *81 also went to The Bayou, another area bar on West Chimes Street, at some point in the course of the evening, where he stayed for a short time.
At approximately 1:45 a.m., plaintiffs and their friends decided to leave and began walking back to their automobile parked in the lot located off West State Street. They returned to their vehicle the way that they had come, through an alleyway connecting Chimes Street and the lot where their vehicle was parked. The alleyway ran between two buildings. One building houses The Bayou and was owned by the Losavio Trust; the other building was vacant at the time and owned by Four By Two.[4]
As they walked through the alleyway towards the lot, plaintiffs were physically attacked and beaten by an unidentified group of men who had been standing in the alleyway. The attack began in an area near the end of the alleyway across from The Bayou, closest to the rear corner of the vacant building, and proceeded into the parking lot. Both Moonshower and Bezet were ultimately stabbed and seriously injured by Lavigne, in an area in the parking lot. Although initially charged with two counts of attempted murder, Lavigne later pleaded guilty to two counts of aggravated battery.

DESCRIPTION OF THE NEIGHBORHOOD
Out of the local business enterprise defendants, only The Bayou and Highland Coffees hold leases in close proximity to the alleyway/parking lot area in which plaintiffs were attacked.[5] The Bayou occupies a building owned by the Losavio Trust, which building faces West Chimes Street and borders one side of the alleyway. The edge of The Bayou's lease line is the overhang of the roof, or drip line, which is about six inches beyond the building. Thus, although the building occupied by The Bayou abuts the alleyway, The Bayou's lease technically encompasses six inches of the alleyway.[6] Additionally, The Bayou leases a small area immediately behind the building which area abuts the parking lot.
Highland Coffees leases from Tigertown Associates and occupies a building which is not adjacent to the parking lot or alleyway; however, the Highland Coffees lease includes use of the parking lot. In its lease agreement with Tigertown Associates, Highland Coffees pays a "common area maintenance" expense as part of its rent. Under the terms of the lease, the parking lot area is included as a "common area" covered by the "common area maintenance" expense.
As stated above, plaintiffs explained at oral arguments on appeal that they named the seven local business enterprises as defendants because these businesses had at one time jointly hired and paid for foot patrol security for the area.[7] The group had contracted with Cantu Security, Inc. ("Cantu") to provide off-duty Baton Rouge Police Department officers to conduct two-man foot patrols in an area bounded by State Street, Highland Road and West Chimes Street, going down to Slinky's. The contract with Cantu lasted about a year, from early November 1993 until early November 1994. Thus, the foot patrol contract had been cancelled approximately 18 months prior to the stabbing incident herein.

*82 ACTION OF THE TRIAL COURT
The trial court heard the motion for summary judgment filed by Louie's Café separately on December 12, 1997 and orally rendered judgment in favor of Louie's Café. In its written reasons for judgment granting the motion filed by Louie's Café, the court found that Louie's Café
did not own the parking lot where this incident occurred and that there was nothing presented by the Plaintiffs that would show ownership by sale, lease, etc. Further, the court found that Louie's is not a part of any association, organization, or other group that would be liable to the Plaintiffs in this case.
Thus, by judgment signed on April 15, 1998, the trial court granted this defendant's motion for summary judgment and dismissed with prejudice all claims against it in both suits.[8]
In granting the summary judgment in favor of the five business enterprise defendants and in rejecting the motions for summary judgment brought by the property owner defendants, the court apparently recognized and deemed it significant that the business enterprise defendants did not own or possess the land where the attack allegedly occurred. Thus, it appears that the trial court found no duty on the part of the defendants who did not own the land on which the attacks occurred.
Plaintiffs appeal averring that the trial court erred in reasoning that these defendants had no liability absent an ownership interest in the areas where the attacks occurred and, thus, no duty to the plaintiffs. Additionally, plaintiffs contend that the trial court erred in finding the defendants could not be held liable under the facts presented herein for reasonably foreseeable third-party criminal conduct occurring on the private property of another. Finally, plaintiffs contend that the trial court erred in failing to find that defendants had breached their assumed duty to protect patrons/invitees by providing a security patrol, which duty had been abandoned.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial, where there is no genuine factual dispute. Sanders v. Ashland Oil, Inc., 96-1751, p. 5 (La.App. 1st Cir.6/20/97); 696 So.2d 1031, 1034, writ denied, 97-1911 (La.10/31/97); 703 So.2d 29. It should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966.
The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action and is now favored. LSA-C.C.P. art. 966(A)(2). The initial burden continues to remain with the mover to show that no genuine issue of material fact exists. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense, then the nonmoving party must produce factual support sufficient to satisfy his evidentiary burden at trial. LSA-C.C.P. art. 966(C)(2). If the nonmoving party fails to do so, there is no genuine issue of material fact and summary judgment should be granted. LSA-C.C.P. arts. 966 and 967; Berzas v. OXY USA, Inc., 29,835, pp. 7-9 (La.App. 2nd Cir.9/24/97); 699 So.2d 1149, 1153-1154.
Appellate courts review summary judgments de novo under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *83 Sanders, 96-1751 at p. 7; 696 So.2d at 1035. Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Rambo v. Walker, 97-2371, p. 4 (La.App. 1st Cir.11/6/98); 722 So.2d 86, 88, writ denied 98-3030 (La.1/29/99); 736 So.2d 840.

DISCUSSION
The undisputed facts presented herein establish the following. Highland Coffees is a business located in a strip shopping center which is near the parking lot in question. Highland Coffees leased its space from Tigertown Associates, the owner of the strip mall and parking lot in question, and its leased premises extended to the parking lot where plaintiffs were stabbed. The Bayou is a business whose premises are adjacent to the alleyway and parking lot, but The Bayou does not own the parking lot or alleyway, and its lease does not include use of these areas for passage and parking.[9] The Chimes, Varsity Theatre and Slinky's are all businesses located nearby, but not adjacent to, the parking lot and alley.
In November of 1993, these businesses entered into an agreement to provide security for approximately a two block area, which encompasses their businesses as well as the alley and parking lot where plaintiffs were attacked. However, in November of 1994, approximately eighteen months prior to the attack on plaintiffs, defendants discontinued this security patrol.
Considering these facts, the legal issues presented by defendants' motions for summary judgment include: (1) what duty is owed by the owner or possessor of business premises to protect others from criminal activities of third persons occurring on the occupied premises? (2) does a business owner owe a duty to others to protect them from the criminal activities of third persons occurring on property which is located adjacent to or in the general vicinity of the business, but not owned or occupied by the business owner? and (3) does a business owner assume a duty, which it cannot later abandon, to protect others on adjacent or nearby property where the business owner had provided security for that area in the past?

Duty of Owner or Occupier of the Business Premises
In Louisiana, the duty-risk analysis is used to determine a business establishment's liability to a patron for criminal assault by a third party. Panyanouvong v. T & H Convenience Store, Inc., 97-2727, p. 4 (La.App. 1st Cir.12/28/98); 734 So.2d 9, 12. To prevail under a duty-risk analysis, the plaintiff must prove: (1) that the defendant owed a duty of care to the plaintiff; (2) that the defendant breached the duty; (3) that the breach was a cause in fact of the harm; and (4) that the risk and harm encountered by the plaintiff fall within the scope of the protection afforded by the duty breached. Gardner v. Griffin, 97-0379, p. 7 (La.App. 1st Cir.4/8/98); 712 So.2d 583, 588.
The first prong of the analysis is whether there was a duty on the part of the defendants to protect against the risk involved. Whether a duty is owed is a question of law. Gardner, 97-0379 at p. 7; 712 So.2d at 588. Generally, there is no duty to protect others from the criminal activities of third persons. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364, 1371 (La.1984). Nevertheless, any business which invites the company of the public must take reasonably necessary acts to guard against the predictable risk of assaults, but it is not the insurer of the *84 safety of its patrons. Peterson v. Gibraltar Savings and Loan, 98-1601, p. 7 (La.5/18/99); 733 So.2d 1198, 1204; Harris, 455 So.2d at 1369.
In certain situations, a duty may be imposed upon a business to protect others from the criminal activities of third persons which occur on the business premises. First, a business which has particular knowledge of the impending occurrence of a criminal act has a duty to protect. Secondly, a duty arises when there is, or should have been, an awareness of a pattern of conduct which made the particular injury-causing criminal conduct foreseeable. Prior criminal activity may be considered in determining foreseeability. The duty of a business owner to take reasonable care for the safety of its patrons does not extend to unforeseeable or unanticipated criminal acts of independent third parties. Therefore, liability can be imposed only when the proprietor knows, or should know, of the potential danger caused by criminal activity. Green v. Infinity International, Inc., 95-2356, pp. 3-4 (La.App. 1st Cir.6/28/96); 676 So.2d 234, 236.
As stated above, defendant Highland Coffees, through its lease with Tigertown Associates, leased the parking lot apparently in common with other lessees in the strip mall where its business was located. As a lessee of the premises, Highland Coffees may owe a duty to protect others from criminal activity on the leased premises if the criminal activity was foreseeable. See Panyanouvong, 97-2727 at pp. 2 n. 2, 4; 734 So.2d at 10; see also Willie v. American Casualty Company, 547 So.2d 1075, 1082, 1083 (La.App. 1st Cir.1989).
In denying the motions for summary judgment filed by Four By Two and Tigertown Associates, the alleged owners of the lot and alleyway, the trial court stated that "there is at least one genuine issue of material fact, which is whether these owners could have `foreseen' that this private parking area and/or alleyway was unreasonabl[y] dangerous." For the reasons set forth by the trial court in denying summary judgment as to the defendant landowners, we conclude that summary judgment should have also been denied as to defendant Highland Coffees. Accordingly, the judgment in its favor must be reversed.

Extension of Duty of Business Owner to Adjacent or Nearby Property
While the principles of law governing the duty of a owner or occupier of land for criminal misconduct occurring on the business premises appear to be well settled, whether this duty extends to criminal misconduct occurring on property adjacent to or in the vicinity of the business premises is not as clear.
In Banks v. Hyatt Corporation, 722 F.2d 214, 225-226 (5th Cir.1984), the United States Fifth Circuit Court of Appeals discussed the liability of a business owner for injuries sustained by a patron on adjoining property and concluded as follows:
[U]nder Louisiana law, the duty of a business to protect invitees can extend to adjacent property, particularly entrances to the business premises, if the business is aware of a dangerous condition on the adjacent property and fails to warn its invitees or to take some other reasonable preventive action. (Emphasis added).
In Banks, the defendant hotel owner was found liable for the death of one of its patrons who was murdered on the sidewalk in front of the hotel. The federal Fifth Circuit determined that Louisiana law would extend the duty of a business to protect invitees from dangerous conditions on adjacent land, at least where the injury occurs on an entrance to the business premises, where the business was aware of the dangerous condition. Banks, 722 F.2d at 225-226.
In concluding that Louisiana law would impose such a duty, the Fifth Circuit relied *85 in part upon the Louisiana Supreme Court case of Cothern v. LaRocca, 255 La. 673, 232 So.2d 473 (1970). In Cothern, a patron of a restaurant parked his automobile partially on the restaurant's property and partially on adjoining motel property. As the patron's wife alighted from the vehicle, she stepped into an open hole on the motel property, injuring herself. Cothern, 255 La. at 679-680, 232 So.2d at 475. In finding that the restaurant owner owed no duty to the plaintiff, the Court considered the following facts to be pertinent:
LaRocca, the restaurant owner, did not know that invitees of the restaurant sometimes parked on the motel property. No invitation, either implied or expressed, had been extended to his invitees to use the abutting premises. He did not know of the existence of the uncovered hole on the adjacent premises and could not, even with reasonable inspection from his own premises, have readily, if at all, discerned the hole in the tall grass. We conclude that under these facts LaRocca owed no duty to protect Mrs. Cothern from this unknown defect on the adjoining property.
Cothern, 255 La. at 687, 232 So.2d at 478.
The U.S. Fifth Circuit in Banks reasoned that the Cothern analysis necessarily implied that had the owner invited its patrons to use the adjacent property or known that they sometimes did and knew or should have known of the dangerous condition, the Supreme Court would have found that the business owner owed a duty of care to its invitee. We disagree. In Cothern, the Supreme Court specifically stated that it was not determining whether the premises owner or possessor owed a duty to protect its invitees where it actually knew or should have known of a dangerous condition upon adjacent property which threatened its invitees' safety by reason of their customary use of that property. Cothern, 255 La. at 687, 232 So.2d at 478. Clearly, the Court had no need to reach that issue, because those facts were not present in the Cothern case.
In Hebert v. Taco Bell Corporation, 613 So.2d 729, 731-732 (La.App. 4th Cir.1993), the Fourth Circuit addressed the precise issue of a business' liability for criminal activity on adjacent property. In that case, the plaintiffs' son and another exchanged "fighting" words in a Taco Bell parking lot. The boys then crossed a fence into a neighboring park, where they engaged in a physical altercation which led to the death of plaintiffs' son. Regarding any duty owed by Taco Bell, the Fourth Circuit stated simply that the defendant business owner had no duty to protect its patrons from injury occurring elsewhere. Hebert, 613 So.2d at 732. The Fourth Circuit reasoned that even assuming that Taco Bell had a duty to provide a security guard on its premises, the scope of protection afforded by that duty could not extend to injuries caused by the intentional, tortious acts of third persons committed off the business premises. Hebert, 613 So.2d at 732. In finding no liability, the court concluded as follows: "It simply isn't reasonable to hold Taco Bell responsible for the safety of persons who may have been a patron at one time, where injury is caused by the intentional acts of others inflicted off the premises." Hebert, 613 So.2d at 733.
Other appellate court decisions have addressed the duty of a business owner for injuries occurring on adjacent property where the injuries were caused by something other than criminal activity. In Lowe v. Thermal Supply of Shreveport, Inc., 242 So.2d 351, 352 (La.App. 2nd Cir. 1970), the Louisiana Second Circuit, while ultimately finding no liability, held that the business owner owed a duty to the plaintiff whose injury occurred when she fell on a vacant lot adjoining the defendant's refrigeration business. However, the basis for imposing a duty therein was that the defendant requested that its patrons pick up items at the rear of its business, which could be accessed only through the adjacent *86 lot. Because the defendant's customers were forced to cross the lot to retrieve items left to be picked up behind the business, the court found that the customers were invitees, to whom the defendant owed a duty to exercise ordinary care to protect them from reasonably foreseeable hidden dangers on that adjacent property. Lowe, 242 So.2d at 352.
In Jones v. Gillen, 504 So.2d 575 (La. App. 5th Cir.), writ denied, 508 So.2d 86 (La.1987), the Fifth Circuit Court of Appeal considered whether the owners of a campsite were liable for a teenager's drowning in an adjacent creek. The court held that while a landowner is usually not liable for injuries occurring from defects on adjacent property, a particular defendant cannot escape liability by the mere fact of his status as a non-owner. Jones, 504 So.2d at 579. Applying a duty-risk analysis, the court concluded these defendants, who had posted warning signs to "Swim At Your Own Risk," had not been negligent. Jones, 504 So.2d at 579-580.
Regarding extension of a landowner's duty to nearby property, in Lanclos v. Tomlinson, 351 So.2d 1218 (La.App. 3rd Cir.), writ denied, 352 So.2d 1023 (La. 1977), the Third Circuit considered whether a landowner should be liable for the plaintiff's injuries which occurred on a bridge which provided ingress and egress to the landowner's property, but which was not actually abutting the landowner's property.[10] The plaintiff therein fell while crossing the bridge after returning from the residence of the defendant landowner's tenant, who gave her food scraps for her pig. Lanclos, 351 So.2d at 1220. Stating that a lessor-landowner may have a duty to warn his tenants of observable defects on adjoining premises or at points of ingress and egress, the court nonetheless found no liability because any defects in the bridge were not apparent. Lanclos, 351 So.2d at 1223.
Thus, in the only case our research has revealed which dealt with nearby property that was not actually adjoining the landowner's premises, the court did not squarely decide the issue of duty, but rather stated that a duty may extend to nearby, but non-adjoining, property if that property provides ingress or egress to the landowner's premises.
In sum, the courts have recognized the general rule that a landowner is not usually held liable for injuries which occur from defects on adjacent property. Jones, 504 So.2d at 579-580. In considering whether a landowner's duty should be extended to adjacent or nearby property, the courts have considered factors such as whether the owner invited its patron to use that property and whether the property provided a means of access to business premises. Lowe, 242 So.2d at 352; Lanclos, 351 So.2d at 1223.
Nonetheless, we do not find that there is any binding Louisiana Supreme Court precedent for the imposition of a duty upon a business owner to protect its patrons from criminal activity occurring beyond the business premises. See Cothern, 255 La. at 687, 232 So.2d at 478; cf. Banks, 722 F.2d at 225-226. Moreover, we are not persuaded that the analysis applied in cases involving injury due to a defect in the adjoining or nearby premises warrants imposition of a duty herein. Rather, we find the facts of Hebert most analogous and the reasoning of the Fourth Circuit therein to be persuasive. As noted by the Fourth Circuit, it simply is not reasonable to hold a business responsible for the safety of persons who may have been a patron at one time, where injury is caused by the intentional acts of others inflicted off the business premises. Hebert, 613 So.2d at 733.
For these reasons, we decline to extend any duty owed by defendant The Bayou, *87 an adjacent business, and defendants The Chimes, Varsity Theatre and Slinky's, nearby but non-adjacent businesses, to encompass the harm suffered by plaintiffs herein by the criminal acts of third persons off these business premises.

Assumption of a Duty to Protect Beyond the Business Premises
Finally, we must consider whether defendants, by virtue of having hired in the past a security company to patrol the vicinity surrounding their business establishments which included the alley and parking lot at issue, had a continuing duty to provide such security at the time plaintiffs were attacked.
A business owner may voluntarily assume a duty of protection by hiring security guards to protect the business and its patrons. When a duty to protect others against such criminal misconduct has been assumed, liability may be created by a negligent breach of that duty. Harris, 455 So.2d at 1369, 1371; Caronia v. McKenzie's Pastry Shoppes, 97-0681, p. 6 (La. App. 4th Cir.10/1/97); 700 So.2d 1315, 1319, writ denied, 97-2695 (La.1/9/98); 705 So.2d 1113.
Nonetheless, the act of assuming a duty by providing security does not prevent a business owner from ever abandoning that duty. Hodge v. Liquid Ventures, 93-902, pp. 5-6 (La.App. 3rd Cir.3/2/94); 634 So.2d 1337, 1340. Rather, once an owner abandons an assumed duty to provide security, its only duty thereafter is that imposed by general tort law. Hodge, 93-902 at p. 6; 634 So.2d at 1340.
In the instant case, defendants had discontinued the services of the security company previously hired to patrol the area approximately eighteen months prior to the attack on plaintiffs. Thus, at the time of the attack, the only duty owed to them by defendants was that imposed by general tort law. As discussed above, except as to the duty potentially owed by a lessee, we find no basis for extending any duty owed by defendants to encompass the risk of injury to others from criminal activity occurring off their business premises under the facts of this case.

CONCLUSION
For the above and foregoing reasons, the portion of the April 15, 1998 judgment which granted the motion for summary judgment of Cadex, Inc. d/b/a "Highland Coffees" is reversed. In all other respects, the judgment is affirmed. The matter is remanded for further proceedings consistent with this opinion.
Costs of this appeal are assessed equally against plaintiffs and Cadex, Inc.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

*88 APPENDIX A

ORDER
This court, ex proprio motu, hereby orders that the second sentence of the second full paragraph on page 5 of its June 25, 1999 opinion in this matter be amended to read as follows:
Those writs were denied, Bezet v. The Original Library Joe's, 98 CW 1264 and 98 CW 1279 (La.App. 1st Cir. 10/22/98).
NOTES
[1] Plaintiffs also named several insurance companies in their petitions.
[2] Additionally, Moonshower and Bezet alleged that the defendants were strictly liable for plaintiffs' injuries under LSA-C.C. art. 2317. However, we note that LSA-C.C. art. 2317.1 was enacted by Act 1 of the First Extraordinary Session of 1996, effective April 16, 1996, prior to the date of the events giving rise to this suit. Article 2317.1 modifies article 2317 by changing the basis for imposing liability under the article from a strict liability standard to a negligence. See Commentary by William E. Crawford preceding Form No. 311 in LSA-C.C.P. Pleadings and Judicial Forms, Vol. 10.
[3] The automobile entrance to the parking lot is from West State Street.
[4] The vacant building owned by Four By Two now houses Boyd's Clothing.
[5] See the plat of the area attached hereto as Appendix A and forming part of this opinion.
[6] The remainder of the alleyway itself is owned by the property owner/defendant, Four By Two.
[7] Although the security patrol contract was initially agreed to by ten area businesses, three members withdrew from the security detail agreement shortly after its inception, to wit: Subway; College Supply Bookstore and Pizza Hut. These short-lived participants in the security patrol agreement were not named as defendants by either plaintiff herein.
[8] Although the summary judgment in favor of Louie's Café is the subject of a separate appeal, we deem the trial court's reasoning relevant to this case inasmuch as the trial court did not render its reasons for granting the summary judgment with respect to similarly situated defendants involved in this appeal.
[9] While The Bayou's lease does technically extend six inches into the alleyway to encompass the overhang of its roof, it is clear that the lease of this six inches does not contemplate use of the alleyway for passage. Moreover, the attack on plaintiffs did not occur in this six-inch strip covered by The Bayou's lease.
[10] While the bridge did not technically abut defendant's property, the edge of the bridge was only nine feet away from the porch of defendant's house. Lanclos, 351 So.2d at 1220.