GWENDOLYN ADAMS

VERSUS

NATHANIEL ROSE AND PINNACLE
ENTERTAINMENT, INC., D/B/A BOOMTOWN
CASINO & HOTEL NEW ORLEANS

NO. 23-CA-119

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 803-473, DIVISION "D"
HONORABLE SCOTT U. SCHLEGEL, JUDGE PRESIDING

December 27, 2023

**FREDERICKA HOMBERG WICKER**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Jude G. Gravois, and Marc E. Johnson

**REVERSED AND REMANDED**
    **FHW**
    **JGG**
    **MEJ**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
GWENDOLYN ADAMS
    Jake J. Weinstock
    Irvy E. Cosse, III

COUNSEL FOR DEFENDANT/APPELLEE,
LOUISIANA-1 GAMING, A LOUISIANA PARTNERSHIP-IN-COMMENDAM
    D. Russell Holwadel
    Kyle M. Truxillo

**WICKER, J.**

Plaintiff, Gwendolyn Adams, appeals the trial court's summary judgment in favor of Defendant, Louisiana Gaming-1 d/b/a Boomtown Casino & Hotel New Orleans. Because we find that genuine issues of material fact exist as to whether Defendant negligently breached a duty to provide sufficient security for casino patrons in its exterior parking lot, we reverse the trial court judgment and remand this matter to the trial court for further proceedings.

**Factual and Procedural Background**

On January 24, 2020, Plaintiff filed suit in the 24th Judicial District Court against Defendant[1] and Nathaniel Rose for personal injuries arising out of a February 22, 2019 purse snatching incident that occurred when Mr. Rose stole Plaintiff's purse while she walked through the Boomtown Casino parking lot. Plaintiff alleged that, as a result of Mr. Rose's actions, she sustained personal injuries, loss of enjoyment of life, loss of wages, and other damages. Plaintiff further alleged that Defendant was negligent in failing to take necessary measures to protect the safety of business invitees by failing to properly maintain, inspect, and supervise in and around the casino's premises.

After initial discovery, on September 14, 2022, Defendant filed a motion for summary judgment, contending that it owed no duty to protect Plaintiff from a third-party, Mr. Rose's, criminal actions. In its motion for summary judgment, Defendant recognized its duty to provide a reasonably safe premises for its patrons, but asserted that it met its duty through taking affirmative steps to provide its own security personnel, in addition to contracting with Jefferson Parish to ensure that Jefferson Parish Sheriff's Office (JPSO) detail officers would also be present in the

---

[1] Plaintiff initially filed suit against Nathaniel Rose and Pinnacle Entertainment, Inc. d/b/a Boomtown Casino and Hotel New Orleans (Pinnacle). On February 26, 2020, Plaintiff filed a supplemental and amended petition naming Louisiana-I Gaming d/b/a Boomtown Casino & Hotel New Orleans as an additional defendant. On June 4, 2020, plaintiff filed a voluntary motion to dismiss Pinnacle from the suit, which the trial court granted on June 15, 2020.

parking lot each night. Defendant contended that summary judgment was appropriate, and that Plaintiff could not meet her burden to prove that Defendant breached its duty to Plaintiff under the facts of this case.

In support of its motion for summary judgment, Defendant attached Plaintiff's deposition testimony. In her deposition, Plaintiff testified that on February 22, 2019, she arrived to Boomtown Casino between 7:00 p.m. and 7:15 p.m.[2] After she parked and exited her vehicle in the parking lot, she began walking toward the casino entrance. She stated that as she passed a champagne-colored older model SUV, she recalled a man came from behind her and said, "Give me that purse," to which plaintiff responded, "No." She testified that she carried her purse on her shoulder and that the man grabbed the purse, breaking the strap, and pushed her to the ground. She testified that another patron, who had passed her in the parking lot, offered to find security to report the incident.

Plaintiff testified that she had visited Boomtown Casino on numerous occasions before this incident. She testified that she was aware that the casino offered a complimentary valet service; however, she stated that on that night, she had circled the parking lot several times looking for a valet available and found that "there was nobody there." She further testified that, in each of her prior visits to the casino, she had observed a security vehicle with flashing lights patrolling the parking lot. On the night in question, however, she observed no security patrolling the parking lot, and no valet or other employees were present.

To support its motion for summary judgment, Defendant attached its discovery responses, which set forth various security measures Defendant had put in place pertaining to the casino's exterior parking lot, specifically:

> Defendant retained on-duty JPSO deputies to conduct routine patrols and monitoring of its parking lots. Defendant's security personnel similar[ly] conducted patrols and monitoring of its parking lots, both

---

[2] Defendant also attached Mr. Rose's brief deposition, in which he denied any involvement in the crime whatsoever.

on foot and on a mobile unit. Further, at the time of the Subject Incident, Defendant had in place a police-grade mobile watchtower, which was situated at various locations in the Boomtown parking lot, as well as extensive overhead lighting and caution/warning signs.

Moreover, there were security cameras installed throughout Boomtown's parking lot, and access thereto was limited to a single entrance/exit, monitored by cameras/license plate readers, with the premises further encircled by fencing/seawalls and natural barriers, including the Harvey Canal.

In further support of its motion for summary judgment, Defendant attached the deposition testimony of the assistant security manager, Allean Edwards. Ms. Edwards testified that she had been the assistant security manager at Boomtown Casino for approximately 26 years. In her 26 years, she stated that Plaintiff's incident was the first purse snatching or mugging that she could recall having occurred in the casino parking lot.

Ms. Edwards testified that, on the night in question, she did not witness the crime but, rather, was subsequently informed by the valet supervisor that it had occurred. She met Plaintiff in the parking lot and took her statement.[3] Ms. Edwards stated that JPSO was subsequently called and arrived on the premises at approximately 7:35 p.m.

Concerning her regular duties at the time of the incident, Ms. Edwards testified that she was primarily stationed in the interior of the casino, but that, occasionally if it became necessary, she would drive the mobile unit—a vehicle with lights activated—and patrol the parking lot. She testified that a security employee would generally patrol the parking lot in the mobile unit, but she could not "recall that particular night" whether a security employee had patrolled in the mobile unit. The casino's written policies and procedures, which were attached to Defendant's motion for summary judgment, called for Boomtown Casino's

---

[3] Concerning the size of the Boomtown Casino in-house security staff, Ms. Edwards testified that it had "a lot more than 10" but most likely "less than 50" security employees.

security employees stationed in the "Mobile Unit" to "conduct continuous patrols of all parking areas and administrative building areas."

Ms. Edwards also discussed the "sky tower," a large surveillance unit where security employees would sit and observe the entire exterior area of the premises. She testified that generally someone was stationed in the tower each day, unless the casino had a staffing shortage. She further testified that the sky tower was physically present on the night of the incident but could not recall whether any employee had been stationed in the tower. Ms. Edwards testified that Austin Johnson, the security manager on the date of the incident, would have possession of security "logs" to show which employees were stationed in the sky tower on a particular night.

Mr. Johnson, Boomtown Casino's security manager, testified that he was employed as a security assistant manager at the time of the incident but was promoted to manager after the previous manager retired. He testified that Defendant has a contract with JPSO to provide a "nightly" security detail on the premises, 365 nights a year.[4] He testified that the casino kept logs of the officers' time worked, and submitted the logs to JPSO to allow JPSO to create invoices for the hours worked. He testified that approximately two to three times a year, there are occasions when a JPSO officer may not be available due to staffing issues. He stated that, typically, the JPSO vehicle would park near the casino's front entrance. Mr. Johnson testified that the purpose of having JPSO present at the casino is primarily for police "presence," to serve as a crime deterrent. He stated, however, that, on occasion, security would need JPSO assistance to remove a difficult patron

---

[4] Mr. Johnson acknowledged that he has never seen the contract, as it had been in place prior to his promotion to security manager.

from the casino. He further testified that JPSO would also patrol the parking lot on occasion.[5]

Mr. Johnson testified that he could not recall any prior purse snatching or mugging crimes in his 25 years at Boomtown Casino, but did recall several fights taking place in the parking lot through those years. He testified that the typical JPSO response time for those prior parking lot incidents had been 1-2 minutes, pointing out that arguably JPSO had been on the casino property at the time of those incidents.

Defendant subsequently supplemented its motion for summary judgment with Mr. Johnson's affidavit in which he attested that, at the time of the incident, "Boomtown maintained a level of security personnel at staffing levels in compliance with Louisiana State Police Gaming Enforcement Division requirements" and that he was "not aware of any specific requirement for security staffing outside of the casino building." Mr. Johnson further attested that in 2019, Boomtown hosted 1,117,712 guests, with 90,225 guests visiting Boomtown in February 2019, the month of the incident at issue. Defendant points to Mr. Johnson's testimony that he could only recall approximately 10 fights occurring in the parking lot. Defendant argues that Mr. Johnson's testimony supports its position that the incident at issue was not foreseeable and, thus, Defendant could not be held responsible for Mr. Rose's criminal actions.

In opposition to Defendant's motion for summary judgment, Plaintiff argued that Defendant's evidence showed that Defendant assumed a duty to provide exterior security in the casino's parking lot, and that it failed to comply with its own security policies and procedures on the night of the incident. Plaintiff relied

---

[5] Defendant also attached aerial photographs of the parking lot, as well as a photograph of a sign stating that Boomtown does not assume any liability for damage to vehicles due to fire, loss, or theft while parked in the parking lot.

on Mr. Johnson's testimony to support her position that Defendant failed to have any security personnel—JPSO or in-house casino security personnel—stationed in the parking lot or at the exterior entrance of the casino property on the night in question. Specifically, she pointed to Mr. Johnson's testimony that in his over 20 years in the security department, he could not recall any incident after which JPSO had a response time anywhere near the approximate 20-minute response time following the incident at issue.[6] Plaintiff contended that she felt comfortable with regularly visiting Boomtown Casino and walking through the parking lot alone because of the security presence that guests came to expect when they visited the casino. However, she argued that the evidence demonstrates that on February 22, 2019, the casino had no JPSO detail officer or other in-house security personnel stationed or assigned to monitor the casino's exterior parking lot.

Following a hearing on the motion for summary judgment, the trial court first found that Defendant assumed a duty to protect its patrons and, second that a criminal act of purse snatching is a foreseeable event because "you have folks coming in and out of a casino who may or may not have large amounts of money" on their person. However, the trial court determined that Plaintiff failed to present any evidence to show that Defendant was negligent or breached its duty at the time of the incident. On December 19, 2022, the trial court granted Defendant's motion for summary judgment, dismissing it from the suit with prejudice. This timely appeal followed.

---

[6] Plaintiff also attached a "log" allegedly produced by JPSO reflecting that a JPSO detail officer, Fidel Garcia, did not report to Boomtown Casino until 10:00 p.m. on the night in question. Defendant objected to consideration of the "log," contending that because it was not attached to a deposition nor authenticated by affidavit, it was not competent summary judgment evidence under La. C.C.P. art. 966. The trial court sustained the objection. Upon review, we agree that the log at issue is not proper summary judgment evidence, and we do not consider it in our analysis herein.

**Discussion**

On appeal, Plaintiff contends that the trial court erred in finding that no genuine issue of material fact exists as to whether Defendant negligently breached its duty to provide a reasonably safe premises for Plaintiff on the night of the incident. Plaintiff points out that Defendant's written policies and procedures call for a casino security employee to patrol the exterior parking lot regularly, but that she did not observe any security employee patrolling the parking lot that night. Further, Plaintiff asserts that Defendant's policies and procedures call for a JPSO officer to be present on the premises "nightly," typically from dusk until dawn, that it is undisputed that the sun had set at the time of the incident, and that the evidence introduced in connection with the motion for summary judgment supports a finding that no JPSO detail officer was on the premises on the night of the incident. Therefore, Plaintiff contends that summary judgment is not appropriate in this case where the evidence demonstrates that Defendant failed to comply with its own policies and procedures by failing to assign any casino security personnel to patrol the parking lot, in conformity with its standard practice—but especially on that night to compensate for JPSO's absence.

Appellate courts review the granting or denial of a motion for summary judgment *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Ford Motor Credit Co., LLC v. Davis*, 20-271 (La. App. 5 Cir. 10/13/21), 329 So.3d 1047. A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact, and is favored and designed to secure the just, speedy, and inexpensive determination of every action. *Fernandez v. City of Kenner*, 21-550 (La. App. 5 Cir. 12/8/21), 335 So.3d 951, 954; *Tozel v. Tozel*, 21-134 (La. App. 5 Cir. 11/3/21), 330 So.3d 1171; *see also Vill. Shopping Ctr. P'ship v. Kimble Dev., LLC*, 18-740 (La. App. 5 Cir. 4/24/19), 271 So.3d 376, 381 and

*Lincoln v. Acadian Plumbing & Drain, LLC*, 17-684 (La. App. 5 Cir. 5/16/18), 247 So.3d 205, 209, *writ denied*, 18-1074 (La. 10/15/18), 253 So.3d 1302. A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966.

The Louisiana Supreme Court has considered whether a business owner owes a specific duty to protect its customers from criminal acts of third parties. In *Posecai v. Wal-Mart Stores, Inc.*, 99-1222 (La. 11/30/99), 752 So.2d 762, 766, the Louisiana Supreme Court considered the issue and stated:

> We now join other states in adopting the rule that although business owners are not the insurers of their patrons' safety, they do have a duty to implement reasonable measures to protect their patrons from criminal acts when those acts are foreseeable. We emphasize, however, that there is generally no duty to protect others from the criminal activities of third persons. *See Harris v. Pizza Hut of Louisiana, Inc.*, 455 So.2d 1364, 1371 (La. 1984). This duty only arises under limited circumstances, when the criminal act in question was reasonably foreseeable to the owner of the business. Determining when a crime is foreseeable is therefore a critical inquiry.

The Court then adopted a balancing test used in other jurisdictions, which considers "the foreseeability of the crime risk on the defendant's property and the gravity of the risk" to determine the extent of the duty owed. *Posecai v. Wal-Mart Stores, Inc.*, 752 So.2d at 768. While generally the most important factor to be considered in deciding whether a business owes a duty of care to protect its customers from the criminal acts of third parties is the existence, frequency and similarity of prior incidents of crime on the premises, the location, nature and condition of the property should also be taken into account. *St. Peters v. Hackbarth Delivery Serv. Inc.*, 16-88 (La. App. 5 Cir. 12/7/16), 204 So.3d 1157, 1161–62, *writ denied*, 17-0034 (La. 2/10/17).

Moreover, a business owner may voluntarily assume a duty of protection by hiring security guards to protect the business and its patrons. "When a duty to

protect others against such criminal misconduct has been assumed, liability may be created by a negligent breach of that duty." *Bezet v. Original Libr. Joe's, Inc.*, 98-1467 (La. App. 1 Cir. 6/25/99), 747 So.2d 77, 87, *writ denied*, 99-2836 (La. 12/17/99), 751 So.2d 879. A duty of protection which has been voluntarily assumed must be performed with due care. *Harris v. Pizza Hut of Louisiana, Inc.*, 455 So.2d 1364, 1369 (La. 1984).

Upon *de novo* review of the evidence submitted in connection with the motion for summary judgment, we find that Defendant voluntarily assumed a duty to provide regular security to patrol the casino's exterior parking lot.[7] We further find that genuine issues of material fact exist as to whether Defendant was negligent in failing to act in conformity with its own established security policies and procedures on the night of the incident at issue. As Plaintiff pointed out in opposition to the motion for summary judgment, no witness could testify or produce any evidence to show whether a JPSO detail officer *or* an in-house security employee had been assigned to patrol the exterior parking lot on that night. Plaintiff testified in her deposition that she had visited the casino on numerous occasions and had always observed a mobile security unit or vehicle with flashing lights patrolling the parking lot. However, she testified that, on the night of February 22, 2019, she did not observe any mobile security vehicle or any security personnel patrolling the parking lot. Although Defendant understandably had no way to ensure that JPSO detail officers would fulfill its nightly patrols, it nonetheless undertook the duty of having exterior security in place—whether through JPSO detail officers or the casino's own in-house security personnel patrolling the parking lot with its own mobile security vehicle.

---

[7] We further find that, despite the lack of prior purse snatching or mugging incidents at the casino, that such incidents may be reasonably foreseeable at a casino for the reasons stated by the trial court.

23-CA-119                                              9

Upon a *de novo* review, we find that the record demonstrates that genuine issues of material fact exist as to whether Defendant complied with its own policies and procedures to have the presence of security personnel in the parking lot or at the exterior entrance of the casino on the night in question. Thus, based on the evidence submitted in connection with the motion for summary judgment, and the particular facts and circumstances present in this case, we find that the trial court erred in granting summary judgment in favor of Defendant. Our holding only permits the trier of fact to determine whether Defendant complied with its own policies and procedures to have the presence of security personnel in the parking lot or at the exterior entrance of the casino on the night in question; we make no such finding ourselves. Accordingly, we reverse the summary judgment granted in favor of Defendant and we remand this matter to the trial court for further proceedings.

**<u>REVERSED AND REMANDED</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**DECEMBER 27, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**23-CA-119**

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HON. JOSEPH A. MARINO, III (DISTRICT JUDGE)
JAKE J. WEINSTOCK (APPELLANT)          D. RUSSELL HOLWADEL (APPELLEE)          HEATHER E. REZNIK (APPELLEE)
KYLE M. TRUXILLO (APPELLEE)

### MAILED
IRVY E. COSSE, III (APPELLANT)
ATTORNEY AT LAW
1515 POYDRAS STREET
SUITE 900
NEW ORLEANS, LA 70112